**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JAMES A. CIESNIEWSKI, | ) | |
| Darryl NORMAN, | ) | |
| on behalf of themselves and | ) | |
| on behalf of all persons similarly situated | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:16-cv-00817-WTL-TAB |
| | ) | |
| | ) | |
| ARIES CAPITAL PARTNERS, INC., | ) | |
| doing business as ARIES DATA | ) | |
| COLLECTIONS; ASTA FUNDING, INC.; | ) | |
| PALISADES COLLECTION, LLC; | ) | |
| PALISADES ACQUISITION XVI, LLC; | ) | |
| PARKER L. MOSS;  and | ) | |
| PARKER L. MOSS, P.C.; | ) | |
| | ) | |
| Defendants. | ) | |

<u>**FIRST AMENDED COMPLAINT – CLASS ACTION**</u>

**INTRODUCTION**

1.      Plaintiffs James A. Ciesniewski and Darryl Norman, on behalf of themselves and all others similarly situated, for their complaint allege upon personal knowledge as to themselves and information and belief as to other matters, state as follows:

2.      Plaintiffs bring this action on behalf of thousands of residents of the various states of the United States from whom defendants are attempting to enforce judgments entered in lawsuits brought by a number of now-dissolved corporations:  Great Seneca Financial Corporation, Centurion Capital Corporation, Platinum Financial Services Corporation, Colonial Credit Corporation and Monarch Capital Corporation ("Dead Companies").

3.      Plaintiffs allege that defendants are not entitled to enforce the judgments, and that

1

to conceal the problem, defendants falsely pretended to be or to represent the Dead Companies, when that is not the case.

4.      Plaintiffs allege violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq ("FDCPA") and state law.

5.      The persons responsible for the scheme are:

a.      Asta Funding, Inc. ("Asta"), a publicly traded company in the business of purchasing and collecting charged off consumer debt;

b.      Asta's wholly-owned subsidary, Palisades Collection, LLC ("Palisades Collection");

c.      Another of Asta's wholly-owned subsidiaries, Palisades Acquisitions XVI, LLC ("Palisades XVI");

d.      Aries Capital Partners, LLC, doing business as Aries Data Collections ("Aries"), which supervised the collection lawyers engaging in the conduct;

e.      Collection law firm Parker L. Moss, P.C. and its principal,  Parker L. Moss.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), and 28 U.S.C. §§1331 (general federal question), 1337 (interstate commerce) and 1367 (supplemental jurisdiction).

7.      Venue and personal jurisdiction is proper because defendants directed collection activity against residents of Indiana and through use of Indiana courts.

## PARTIES

### Plaintiffs

8.    Plaintiff Ciesniewski is an individual who resides in Indianapolis, Indiana.

9.    Plaintiff Norman is an individual who resides in Gurnee, Illinois.  He was  subject to collection activities by defendants in the courts of Marion County, Indiana.

### Defendant Asta

10.    Defendant Asta is a publicly traded Delaware corporation with principal headquarters at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632.

11.    According to its quarterly report on form 10-Q for the period ending June 30, 2016, filed with the Securities and Exchange Commission, as of June 30, 2016, Asta had a net worth of $176,490,000.

12.    Asta is engaged in the business of obtaining charged off consumer debt.   Asta describes its business in the 10-Q as follows: "Asta Funding, Inc., together with its wholly owned significant operating subsidiaries Palisades Collection LLC, Palisades Acquisition XVI, LLC . . .  is engaged in several business segments in the financial services industry including . . . the business of purchasing, managing for its own account and servicing distressed consumer receivables, including charged off receivables, and semi-performing receivables."  (Original page 8)

13.    Asta places the debts with subsidiaries, such as Palisades XVI, and has other subsidiaries, such as Palisades Collection, collect the debts.

14.    Asta uses the mails and telephone system in conducting its business and is a "debt collector" as defined in the FDCPA.

15.    Gary Stern is President and Chief Executive Officer of Asta.

3

**Defendant Palisades Collection**

16.    Defendant Palisades Collection is a Delaware limited liability company headquartered at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632. It does business in Indiana. Its registered agent and office is CT Corporation System, 150 West Market Street, Indianapolis, IN 46204.

17.    Defendant Palisades Collection is engaged in the business of a collection agency, using the mails and telephone system to collect delinquent consumer debts allegedly owed to others.

18.    Defendant Palisades Collection is the plaintiff in numerous collection lawsuits. For example, in Chicago, Illinois it filed over 1,000 cases during 2009-2016.

19.    Defendant Palisades Collection is a "debt collector" as defined in the FDCPA.

20.    Defendant Palisades Collection has one manager, Gary Stern.

**Defendant Palisades XVI**

21.    Defendant Palisades XVI is a Delaware limited liability company with headquarters at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632. It does or transacts business in Indiana.

22.    Defendant Palisades XVI is the plaintiff in numerous collection lawsuits throughout the United States, including over 120 in Illinois.

23.    The mails and telephone system are used in connection with such lawsuits.

24.    Defendant Palisades XVI is a debt collector as defined in the FDCPA.

25.    Defendant Palisades XVI  has one manager, Gary Stern.

**Relationship of Asta and Palisades Collections and Palisades XVI**

26.    Palisades Collections and Palisades XVI are wholly owned subsidiaries of Asta.

4

27.     Both Palisades entities are controlled by Asta and their financial statements are combined for reporting purposes with Asta's financial statements.

28.     Asta has common officers/ managers and personnel with Palisades Collections and Palisades XVI.

29.     The business operations of the three entities are so intertwined that the acts of both Palisades entities are attributable to the parent, Asta.  Asta, Palisades Collections and Palisades XVI are sometimes referred to as the "Palisades entities."

**Defendant Aries**

30.     Defendant Aries Capital Partners, LLC, doing business as Aries Data Collections, is a New York corporation with principal offices at 243 Rt. 100, Somers, NY 10589.  It is in the business of collecting consumer debts. The company regularly collects the debts of Indiana consumers including debts based on Indiana State Court Judgments.  Aries uses the mails and telephone system in conducting business, and it is a debt collector as defined in the FDCPA.

31.     Asta hired Aries to handle collection cases for Palisades XVI and Palisades Collection.

32.     Aries recruited law firms to handle the cases, supplied those firms with instructions and documents, and in some cases prepared the pleadings to be filed.

33.     Aries supplied Asta with accountings and reports as well as financial metrics.

34.     On its website, www.ariesdata.com, Aries states that it has conducted business as "postjudgment recovery specialists since 1999".   The website refers to network of "partner" collection law firms that Aries works with, stating:

> Aries Data Collections has been an industry leader delivering best-in-class post judgment recovery, litigation and collection services since 1999. Our extensive partnerships have

5

enabled us to manage all phases of the collection process including asset location, skip tracing, and our speciality niche area of post judgment enforcement and litigation.

Our client list includes some of the largest debt buyers in the industry, collection agencies, collection attorneys, schools, management companies as well as many other segments of the financial and medical fields.

Aries has partnered with the most highly skilled law firms specializing in post judgment collections throughout the United States.

Each firm is a member of the National Association of Retail Attorneys, (NARCA) and must complete a comprehensive onboarding process in order to become a partner in our network.  Dedicated Attorney Network Managers oversee each firm communicating on a daily bases to ensure each account placement is receiving maximum focus and driving the highest returns.

Our highly skilled managers oversee every aspect of the day-to-day operations including client communications, proprietary waterfall process for asset location, skip tracing, compliance oversight, audit functions, and custom reporting.  This meaningful involvement of process and compliance with all FDCPA and CFPB regulations creates value and offers our clients an added layer of security.  (http://www.ariesdata.com/, accessed 9/29/2016)

### Defendants Parker L. Moss and Parker L Moss, P.C.

35.     Defendant Parker L. Moss is an attorney practicing law in Fort Wayne, Indiana.

He regularly collects consumer debts owed to others from Indiana residents, including debts

based on Indiana state court judgments. A search of Odyssey shows over 7000 consumer

collection cases in which he appeared for the plaintiff.  He uses the mails and telephone system

in connection with such activities, and is a debt collector as defined in the FDCPA.

36.     Defendant Parker L. Moss practices through an Indiana  professional corporation,

Parker L. Moss, P.C., with an office address of  127 West Berry Street, Suite 333, P.O. Box

10839, Fort Wayne, IN, 46854.  Parker L. Moss is the president of Parker L. Moss, P.C., and

responsible for directing all of the actions complained of herein.  Parker L. Moss, P.C., uses the

mails and telephone system in connection with such activities, and is a debt collector as defined

in the FDCPA.  Parker L. Moss and Parker L. Moss, P.C., are sometimes referred to herein as the "Attorney defendants."

37.    Defendant Parker L. Moss, P.C., maintains a web site which states: "Commercial & Consumer Collections [¶]  Our collection law firm provides commercial collection services to all companies having debtors in the [sic] Indiana. Parker Moss has tremendous experience in the collection of bad debt claims and employs dedicated and determined collection personnel who strive every day be the best they can be. We not only pursue collection of each and every debt placed with our collection firm but we attempt to do it in such a way that it ensures the greatest success and the most positive results for our clients. We will give you our best efforts and will design a collection campaign for your company that is not only suitable but results oriented and successful. We can make a big difference in your bottom line.   [¶]  We are a collection law firm and not a collection agency. We have the ability to litigate accounts throughout the State of Indiana which enables us to achieve a higher than average recovery ratio for our clients. We look forward to speaking with you about your collection claims and if you have any questions that this website does not answer to your satisfaction, please do not hesitate to contact our office at 800-433-1589 toll free or locally at 260-422-1589 for further information on our firm.  [¶]  Our collection attorney service provides competitive contingent rates, exemplary service and professional results and we want you to know that not only are we highly qualified to handle your Indiana debt collection portfolio but we are true collection professionals and we'll do everything in our power to ensure a successful campaign for your company. We want your business and want you to know that we will work hard every business day to keep it." (http://parkermosslaw.com/)

## BACKGROUND

38.     In the early 2000s there was a large collection law firm named Wolpoff and Abramson, headquartered in Maryland. Wolpoff and Abramson specialized in collecting consumer debts that had been charged off by the original lender. Wolpoff and Abramson established a number of companies to buy and hold the debts – the "Dead Companies."

39.     In 2007, the Dead Companies contracted to sell $6.9 billion in receivables to Asta for a price of about $300 million, or less than 5 cents on the dollar.  The receivables sold may have been less than the total portfolio of the Dead Companies.

40.     To hold this portfolio, Asta created a new subsidiary, Palisades XVI.

41.     In March 2009, the Dead Companies were dissolved.

42.     Wolpoff and Abramson merged and became part of another law firm, Mann Bracken, which then went out of business.

43.     The identification of specific accounts transferred from the Dead Companies to Palisades XVI, and the documentation of any transfers, was poor or nonexistent.  A number of cases found that there was no valid assignment of specific accounts from one of the Dead Companies to Palisades XVI, as well as other improprieties.  *Centurion Capital Corp. v. Guarino*, No. 11117/05, 35 Misc.3d 1219(A), 2012 WL 1543286, 2012 N.Y. Slip Op. 50749(U) (N.Y.City Civ.Ct., April 30, 2012); *Great Seneca Financial Corp. v. Ogbunwale*,  47 Misc.3d 322, 2 N.Y.S.3d 868 (N.Y.City Civ. Ct. 2015); *Colonial Credit Corp. v. Beyers,* 14582/05, 46 Misc.3d 1221(A), 15 N.Y.S.3d 711 (Table), 2015 WL 792058, 2015 N.Y. Slip Op. 50153(U) (N.Y.City Civ.Ct.); *Powell v. Palisades Acquisition XVI, LLC,* 782 F.3d 119 (4th Cir. 2014), and Maryland proceedings described therein.   In the *Beyers*  case, a law firm, Houslanger &

Associates, was sanctioned for attempting to file a notice of assignment to Palisades XVI and a consent to change attorneys long after a judgment had been satisfied.

44.     Houslanger & Associates has since combined operations with defendant Aries, sharing phone numbers, the address of 243 Rt. 100, Somers, NY 10589, and multiple employees. The CEO of Aries Data Collections, Matthew J. Blake as of 9/29/2016 listed on his linkedin.com page that he is currently employed with both Houslanger & Associates and Aries:  "Director Houslanger & Associates PLLC Aug 2001 – Present" and "CEO Aries Data Collections June 2001-Present".

45.     All of the defendants were aware that there were problems with their enforcing judgments entered in the names of the Dead Companies, and that collections of the former Dead Company debts were lagging behind projections.

46.     To avoid inquiry into the lack of assignments by consumers, defendants continued collection activities in the name of the Dead Companies, long after they were dissolved and had no interest in the matter.   The purpose and effect of doing this was to conceal the need for inquiry regarding the assignments, and also to conceal the unlawful conduct complained of herein.

47.     In each case where collection activities were conducted on behalf of a Dead Company:

a.      Defendants are operating under a name other than their true name;

b.      Defendants misrepresented who claims to own the judgment;

c.      Defendants concealed the wrongful conduct complained of herein.

48.     During the last year, numerous post-judgment actions have taken place in the names of the Dead Companies.

49.     In Indiana, since 2015, attorney Parker Moss has undertaken post judgment collection actions in the names of the Dead Companies and without reference to any assignment to any other party on at least 49 occasions, continuing through July 2016.  These cases show that since 2015, at least in some areas,  the Asta defendants, in a joint enterprise with Aries Data Collections and collection attorneys including Parker Moss, have developed a pattern and practice of falsely filing post judgment garnishment and similar pleadings falsely representing that the pleadings are filed by attorneys representing the Dead Companies.

50.     Defendant Parker Moss regularly entered appearances on behalf of the  Dead Companies, even though he had not been retained by the Dead Companies, and the cases had been referred to him by Aries, who supplied documentation that Aries claimed was from Palisades XVI and Palisades Collection.

51.     At no time did Parker Moss have proof of an assignment of an individual account on the cases in which he appeared.

52.     Even after it was pointed out to him that he was claiming to represent companies that no longer existed and weren't his clients, he kept his appearances on file for the Dead Companies and continued collection activities.

53.     When paid by a defendant, Parker Moss would file satisfactions of judgment allegedly on behalf of the Dead Companies.  Moss had no authorization from any of the Dead Companies to do so.  The purpose and effect of this action was to conceal the party on whose behalf the collection activities were undertaken.

54.     In each case, copies of these false papers were sent by mail to the various consumers being collected upon.

10

## FACTS RELATING TO CIESNIEWSKI

55.    On July 11, 2006, Centurion Capital Corporation  filed a complaint against Mr. Ciesniewski for the sum of $12,655.19 based on a credit card used for personal, family or household purposes. The complaint alleged that Centurion was entitled to collect based on "assignment(s) by original creditor(s) to [Centurion] and that [Centurion] is the actual and bonafide owner of the Instrument."  (Exhibit 1)

56.    Centurion obtained a judgment in the amount sought on November 28, 2006. (Exhibit 2)

57.    On April 14, 2015, Parker Moss filed an Appearance (Exhibit 3) and Motion for Proceedings Supplemental (Exhibit 4) against Mr. Ciesniewski, claiming to represent Centurion, and seeking collection of the Centurion debt.

58.    In the Proceedings Supplemental,  Parker Moss represented "[t]hat the plaintiff owns a judgment obtained in this court against the judgment defendant, James Ciesniewski on November 28, 2006, for the sum of [twenty-thousand, seven-hundred and nineteen dollars and ninety-nine cents ($20,719.99)] and costs." Parker Moss had documents reflecting this misrepresentation sent to Mr. Ciesniewski and his employer.  (Exhibits 5-6)

59.    In fact, Parker Moss had not been authorized to act by Centurion and did not represent it.

60.    Though Asta, the Palisades entities, and Aries were not named in the documents filed in Marion Superior Court:

      a.    The Palisades entities hired Aries to collect the debt;

      b.    Aries contracted with Moss to collect on the Centurion Judgment.

    c.     Upon information and belief, employees of Aries drafted the pleadings and court paperwork filed by Moss. Aries told Moss what was owed and the amounts to claim from Mr. Ciesniewski.

    d.     Asta, the Palisades entities, Aries and Moss shared in the fruit of the scheme, distributing proceeds in a proportion and basis that is unknown to the plaintiffs at the time of this complaint.

61.    Mr. Ciesniewski suffered direct harm caused by the actions of the defendants. He had to hire an attorney to fight the garnishment by Moss. A cardiac patient, Mr. Ciesniewski suffered emotional distress and aggravation.

62.    The documents used by defendants in the case of Mr. Ciesniewski are typical of the documents in all of the cases described in this complaint.

### FACTS RELATING TO NORMAN

63.    On May 7, 2004, Darryl Norman was sued by Great Seneca Financial Corp. on a debt incurred for personal, family or household purposes in the Center Township Small Claims Court in Marion County, Indiana. (Exhibit 7)

64.    That case went to judgment in the small claims court. (Exhibit 8) It was appealed de novo to the Marion Superior Court under cause number 49D03-0410-PL-002003 on October 27, 2004. (Exhibit 9)

65.    A judgment on the pleadings was granted on behalf of Great Seneca Financial Corp. on April 8, 2005 in the amount of $1,568.22 plus cost and interest.

66.    On May 22, 2015, Parker Moss filed an appearance and Motion for Proceeding Supplemental for Great Seneca Financial Corp.

67.    Parker Moss represented in the pleadings that he was attorney for Great Seneca

Financial Corporation.

68.    Parker Moss caused interrogatories to be served on Norman's employer, Old Dominion Freight Line, and a garnishment order was entered in favor of Great Seneca Financial Corp.

69.    In fact, Parker Moss did not represent Great Seneca.

70.    Under extreme duress due to the garnishment, Norman agreed to a payoff arrangement and paid off the judgment.  Parker Moss filed a release for judgment paid in full on October 15, 2015.  Parker Moss was therefore engaged in collection activities under the false auspices of Great Seneca Financial Corporation until October 15, 2015.

71.    Darryl Norman did not discover that Parker Moss was not hired by and did not actually represent Great Seneca Financial Corporation until the summer of 2016.   If he had known that Parker Moss had not been retained by Great Seneca Financial Company, he would have been able to question the legality of the garnishment, and would not have been pressured to pay the judgment.

## COUNT I – FDCPA  – CLASS CLAIM

72.    Plaintiffs incorporate by reference paragraphs 1-71.

73.    Defendants, acting in concert, violated 15 U.S.C. §1692e, 1692e(2), 1692e(10), and 1692e(14) when they took collection action in the name of one or more of the Dead Companies.

74.    Section 1692e provides:

§ 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: .. .

13

(2) The false representation of--

    (A) the character, amount, or legal status of any debt; . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization. . . .

75.    Plaintiffs and the class members suffered damages as a result, including:

    a.    Deprivation of accurate and truthful information about the owner of the debt and who the attorney defendants were representing, as required by federal law;

    b.    Time and money spent attempting to obtain truthful information.

    c.    Aggravation and distress.

## CLASS ALLEGATIONS

76.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

77.    The class consists of (a) all natural persons (b) against whom one of the Dead Companies obtained a judgment (c) who were subjected, directly or indirectly, to collection activities on such judgment by any of the defendants herein (including domesticating sister state judgments and renewing or extending the life of judgments)  (d) on or after a date beginning one year prior to the filing of this action (e) where any representation was made that the judgment was still owned by the Dead Company or that the attorneys conducting the collection activities represented the Dead Company.

78.    Based on the figures in Asta's SEC filings concerning the size of the portfolio it

allegedly acquired from the Dead Companies  –  $6.9 billion  – the class is so numerous that joinder of all members is impracticable. If only 1% of the portfolio was reduced to judgment and the subject of collection efforts within the last year, and the average judgment was $10,000, there would be 6,900 class members.

79.     There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The common questions include:

a.     Whether defendants engaged in a pattern of collecting judgments entered in favor of the Dead Companies in the name of the Dead Companies, misrepresenting who was engaging in the collection activities;

b.     Whether engaging in such conduct violated the FDCPA.

80.     Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

81.     Plaintiffs will adequately and fairly protect the interests of all members of the class.  They have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any member of the proposed class.

82.     Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

83.     A class action is the superior means of adjudicating this dispute in that:

a.     Individual cases are not economically feasible;

b.     Class members are unlikely to be aware of their rights, the entire scheme being dependent on concealment of the facts from the class members;

c.     Congress provided for class actions as a means of enforcing the FDCPA.

15

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

      i.     Statutory damages;

      ii.    Actual damages;

      iii.   Attorney fees, litigation expenses and costs of suit;

      iv.   Such other or further relief as is proper.

## COUNT II – FDCPA – INDIVIDUAL CLAIM

84.    Plaintiff Ciesniewski incorporates by reference paragraphs 1-71.

85.    According to the "Motion for Proceedings Supplemental," drafted by Aries and filed by Parker Moss, all on behalf of the other defendants, defendants demanded Mr. Ciesniewski pay a total amount of $34,575.38.

86.    However, the maximum amount owed by Mr. Ciesniewski, as ruled by the November 28, 2006 Summary Judgment (Exhibit 3), was $25,045.94.

87.    The original judgment was $12,655.19. Interest from May 31, 2006 to April 14, 2015 at 8% is $12,390.75. The total is $25,045.94.

88.    Defendants violated the FDCPA, 15 U.S.C. § 1692e, when they falsely represented the amount of this debt.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendants for:

      i.     Statutory damages;

      ii.    Actual damages;

      iii.   Attorney fees, litigation expenses and costs of suit;

      iv.   Such other or further relief as is proper.

16

## <u>COUNT III  – INDIANA DECEPTIVE CONSUMER SALES ACT  – CLASS CLAIM</u>

89.    Plaintiffs incorporate by reference paragraphs 1-71.

90.    All defendants other than Parker Moss and Parker Moss, P.C., are "suppliers" for purposes of the IDCSA as entities that are "debt collectors" under the FDCPA.

91.    The efforts to collect debts are "consumer transactions" for purposes of the IDCSA, which at IC 24-5-0.5-2(a)(1)(C) defines "consumer transaction" to include "The collection of or attempt to collect a debt by a debt collector." IC24-5-0.5-2(a)(15) states that "Debt collector has the meaning set forth in 15 U.S.C. 1692a(6)" but "does not include a person admitted to the practice of law in Indiana if the person is acting within the course and scope of the person's practice as an attorney."

92.    The conduct set forth above is a violation of IC 24-5-0.5-3, which provides:

(a) A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations.

(b) Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication, by a supplier, are deceptive acts:

(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have. . . .

(7) That the supplier has a sponsorship, approval, or affiliation in such consumer transaction the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have.

(8) That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation is false.  . . .

(20) The violation by a supplier of the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.), including any rules or regulations issued under the federal Fair Debt Collection Practices Act (15 U.S.C. 1692 et seq.). . . .

93.    These provisions are violated when defendants collected debts in the name of the Dead Companies without authority from the Dead Companies.

94.    Plaintiffs assert that it is not necessary to plead or prove an incurable deceptive act to state a claim under IC 34-5-0.5-3(20); but to the extent it is necessary to state a claim under 24-5-0.5-3(20), plaintiffs aver that by trying to collect money in the name of a defunct entity, one which the defendants had no direct contact with, was a scheme, device or artifice with intent to defraud, making the deceptive act an "incurable deceptive act".

95.    Plaintiffs relied on the deceptive acts of the defendants by hiring an attorney and otherwise defending proceedings that should not have been brought.

96.    The violations of the defendants were willful. The defendants knew or acted with reckless disregard of the fact that they had no authorization from the Dead Companies to act in their name.

## CLASS ALLEGATIONS

97.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

98.    The class consists of (a) all natural persons (b) against whom one of the Dead Companies obtained a judgment in Indiana  (c) who were subjected, directly or indirectly, to collection activities on such judgment by any of the defendants herein (including domesticating sister state judgments and renewing or extending the life of judgments)  (d) on or after a date beginning 2 years prior to the filing of this action (IC 24-5-0.5-5 (b)) (e) where any

representation was made that the judgment was still owned by the Dead Company or that the attorneys conducting the collection activities represented the Dead Company.

99.    On information and belief, the class is so numerous that joinder of all members is impracticable.

100.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The common questions include:

a.    Whether defendants engaged in a pattern of collecting judgments entered in favor of the Dead Companies in the name of the Dead Companies, misrepresenting who was engaging in the collection activities;

b.    Whether engaging in such conduct violated the IDCSA.

101.    Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

102.    Plaintiffs will adequately and fairly protect the interests of all members of the class.  They have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any member of the proposed class.

103.    Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

104.    A class action is the superior means of adjudicating this dispute in that:

a.    Individual cases are not economically feasible;

b.    Class members are unlikely to be aware of their rights, the entire scheme being dependent on concealment of the facts from the class members;

19

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

    i.      Statutory damages pursuant to IC 24-5-0.5-4 in the amount of $500 per defendant if not willful or $1,000 per defendant if willful;

    ii.     Actual damages;

    iii.    Attorney fees, litigation expenses and costs of suit;

    iv.    Such other or further relief as is proper.

## COUNT IV – ABUSE OF PROCESS – CLASS CLAIM

105.    Plaintiffs incorporate by reference paragraphs 1-71.

106.    Defendants directed legal process to plaintiffs.

107.    Defendants prepared and submitted these documents in the name of one or more Dead Companies, knowing that the Dead Companies had not authorized such actions and that they did not have assignments.

108.    Defendants acted in this manner for the wrongful purpose of concealing defects in the assignments and collecting money to which they were not entitled.

## CLASS ALLEGATIONS

109.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

110.    The class consists of (a) all natural persons (b) against whom one of the Dead Companies obtained a judgment in Indiana (c) who were subjected, directly or indirectly, to collection activities on such judgment by any of the defendants herein (including domesticating sister state judgments and renewing or extending the life of judgments) (d) on or after a date beginning 2 years prior to the filing of this action (IC 34-11-2-4) (e) where any representation

was made that the judgment was still owned by the Dead Company or that the attorneys conducting the collection activities represented the Dead Company.

111.    On information and belief, the class is so numerous that joinder of all members is impracticable.

112.    There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The common questions include:

      a.    Whether defendants engaged in a pattern of collecting judgments entered in favor of the Dead Companies in the name of the Dead Companies, misrepresenting who was engaging in the collection activities;

      b.    Whether engaging in such conduct is an abuse of process.

113.    Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

114.    Plaintiffs will adequately and fairly protect the interests of all members of the class.  They have the requisite personal interest in the outcome of this litigation and have no interest antagonistic to any member of the proposed class.

115.    Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

116.    A class action is the superior means of adjudicating this dispute in that:

      a.    Individual cases are not economically feasible;

      b.    Class members are unlikely to be aware of their rights, the entire scheme being dependent on concealment of the facts from the class members;

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

    i.      Actual damages;

    ii.      Punitive damages;

    iii.      Costs of suit;

    iv.      Such other or further relief as is proper.

## <u>COUNT V – UNJUST ENRICHMENT – CLASS CLAIM</u>

117.    Plaintiff Norman incorporates by reference paragraphs 1-71.

118.    Defendants obtained money through means contrary to equity and good conscience, by pretending to take legal action in the name of one or more Dead Companies, knowing that the Dead Companies had not authorized such actions and that they did not have assignments.  Unless defendants are required to disgorge such money, they will be unjustly enriched.

119.    Defendants acted in this manner for the wrongful purpose of concealing defects in the assignments and collecting money to which they were not entitled.

## CLASS ALLEGATIONS

120.    Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

121.    The class consists of (a) all natural persons (b) against whom one of the Dead Companies obtained a judgment  (c) who were subjected, directly or indirectly, to collection activities on such judgment by any of the defendants herein (including domesticating sister state judgments and renewing or extending the life of judgments) (d) on or after a date beginning 6 years prior to the filing of this action (e) where any representation was made that the judgment

22

was still owned by the Dead Company or that the attorneys conducting the collection activities

represented the Dead Company and (f) defendants obtained any money from the person.

122.   On information and belief, the class is so numerous that joinder of all members is

impracticable.

123.   There are questions of law and fact common to the class members, which

common questions predominate over any questions that affect only individual class members. The

common questions include:

a.   Whether defendants engaged in a pattern of collecting judgments entered in

favor of the Dead Companies in the name of the Dead Companies,

misrepresenting who was engaging in the collection activities;

b.   Whether engaging in such conduct results in unjust enrichment.

124.   Plaintiffs' claim is typical of the claims of the class members. All are based on the

same factual and legal theories.

125.   Plaintiffs will adequately and fairly protect the interests of all members of the

class.  They have the requisite personal interest in the outcome of this litigation and have no

interest antagonistic to any member of the proposed class.

126.   Plaintiffs have retained counsel experienced in consumer credit and debt collection

abuse cases.

127.   A class action is the superior means of adjudicating this dispute in that:

a.   Individual cases are not economically feasible;

b.   Class members are unlikely to be aware of their rights, the entire scheme

being dependent on concealment of the facts from the class members;

23

WHEREFORE, the Court should enter judgment in favor of plaintiffs and the class and against defendants for:

i.    Appropriate damages or restitution;

ii.    Costs of suit;

iii.    Such other or further relief as is proper.

s/ Keith R. Hagan
Keith R. Hagan # 30265-49
HAGAN AND WHITE, LLP
201 N. Illinois Street
Floor 16
Indianapolis, IN 46204
(317) 531-4575

s/ Steven R. Hofer
Steven R. Hofer #11584-49
Consumer Law Office of Steve Hofer
8888 Keystone Crossing, Suite 1300
Indianapolis IN 46240
317-662-4529
hoferlawindy@gmail.com

s/ Daniel A. Edelman
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Michelle Anne Alyea
EDELMAN, COMBS,
LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel A. Edelman, hereby certify that on October 28, 2016, I caused to be filed the foregoing document with the Clerk of the Court using the CM/ECF System, which caused notice to be sent to all counsel of record. In addition, I caused the foregoing document to be served via process server to the following parties:

Asta Funding, Inc.
210 Sylvan Avenue
Englewood Cliffs, NJ 07632

PALISADES COLLECTION, LLC
CT Corporation System
150 West Market Street
Indianapolis, IN 46204.

PALISADES ACQUISITION XVI, LLC
210 Sylvan Avenue
Englewood Cliffs, NJ 07632

s/ Daniel A. Edelman
Daniel A. Edelman