**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| JAMES A. CIESNIEWSKI,<br>on behalf of himself and<br>on behalf of all persons similarly situated | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16-cv-00817-JPH-TAB |
| | ) | |
| | ) | |
| ARIES CAPITAL PARTNERS, INC.,<br>doing business as ARIES DATA<br>COLLECTIONS; ASTA FUNDING, INC.;<br>PALISADES COLLECTION, LLC;<br>PALISADES ACQUISITION XVI, LLC;<br>PARKER L. MOSS;  and<br>PARKER L. MOSS, P.C.; | ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY**

Daniel A. Edelman (IL 0712094)
Cathleen M. Combs (IL 0472840)
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com

Steven R. Hofer
**CONSUMER LAW OFFICE OF STEVE
HOFER**
8888 Keystone Crossing, Suite 1300
Indianapolis, IN 46240
(317) 662-4529
Hoferlawindy@gmail.com

Keith R. Hagan
**HAGAN AND WHITE, LLP**
201 N. Illinois Street   Floor 16
Indianapolis, IN 46204
(317) 531-4575
keith@hlocl.com

## I.    INTRODUCTION

Plaintiff James A. Ciesniewski submits this memorandum and statement of material facts in support of his motion for partial summary judgment on the liability Defendants Aries Capital Partners, Inc. ("Aries"), Asta Funding, Inc. ("Asta"), Palisades Collection, LLC ("Palisades Collection"), Palisades Acquisition XVI, LLC ("Palisades Acquisition XVI"), Parker L. Moss ("Moss"), and Parker L. Moss, P.C. ("Moss PC") for violation of the Fair Debt Collection Practices Act ("FDCPA").[1]

## II.    STATEMENT OF MATERIAL FACTS

### A.    Jurisdiction and Venue

1.    This Court has jurisdiction because Plaintiff asserts claims against Defendants based on the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). (Amended Complaint, Dkt. #43, Counts I-II)  Plaintiff also asserts state law claims based on the same facts.  (Amended Complaint, Counts III-V)

2.    Defendants Moss and Moss PC are located in Indiana (Moss Answer to Amended Complaint, Doc #66, ¶¶35-36) and conducted collection activities in this District.  The claims against the other Defendants are based on their relationship with Moss and Moss PC.

### B.    Parties

3.    **Plaintiff**  Ciesniewski is an individual who resides in Indianapolis, Indiana.   (Dep. of James A. Ciesniewski [Appendix A], pp. 2, 5;  Aries Answer to Amended Complaint, Dkt. #155, answer to ¶8)

4.    **Defendant Asta** is a publicly traded Delaware corporation with principal headquarters at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632.   (Admitted by Asta in Dkt. #67, response to ¶10 )

---

[1]  Plaintiff is filing this motion in accordance with the Court's briefing schedule.  Plaintiff points out that the issue of class certification should be decided, and the class notified, prior to decision on summary judgment.  *Willis-Mitchell v. Portfolio Recovery Assocs., LLC,* 1:12cv01235, 2016 WL 11201113, at *1 (S.D. Ind. Mar. 15, 2016).

5.      Defendant "Asta Funding, Inc., together with its wholly owned significant operating subsidiaries Palisades Collection LLC, Palisades Acquisition XVI, LLC . . .  has been engaged in the business of purchasing, managing for its own account and servicing distressed consumer receivables, including charged off receivables, and semi-performing receivables since 1994 . . . . The primary charged-off receivables are accounts that have been written-off by the originators and may have been previously serviced by collection agencies. Semi-performing receivables are accounts where the debtor is currently making partial or irregular monthly payments, but the accounts may have been written-off by the originators. Distressed consumer receivables are the unpaid debts of individuals to banks, finance companies and other credit providers. A large portion of our distressed consumer receivables are MasterCard®, Visa® and other credit card accounts which were charged-off by the issuers or providers for non-payment. We acquire these and other consumer receivable portfolios at substantial discounts to their face values. The discounts are based on the characteristics (issuer, account size, debtor location and age of debt) of the underlying accounts of each portfolio." (SEC filing on form 10-K for the fiscal year ending Sept. 30, 2014, original page 3 [Appendix B]) The business described above was designated the "consumer receivables segment."  (Id.)

6.      The following illustrates the portion of Asta Funding's revenues derived from the consumer receivables segment:

| Fiscal year | Total revenue | Consumer receivables segment |
|---|---|---|
| 9/30/2014 | $32.2 million | $19.8 million |
| 9/30/2013 | $38.2 million | $31.8 million |
| 9/13/2012 | $42.4 million | $40.8 million |

During 2014 Asta also reported $26.1 "other income" from consumer receivables.   (Asta Funding SEC filing on form 10-K for the period ending Sept. 30, 2014, original page 4 [Appendix B])

7.      For the fiscal years 2015 and 2016 Asta Funding reported the following

regarding the portion of Asta Funding's revenues derived from the consumer receivables segment:

| Fiscal year | Total revenue | Consumer receivables segment |
|---|---|---|
| 9/30/16 | $22.9 million | $18.9 million |
| 9/30/15 | $22.6 million | $22 million |

(Asta Funding SEC filing on form 10-K, Amendment No. 1,  for the period ending Sept. 30, 2016, original page 4 [excerpts in Appendix C])

   8. "Prior to purchasing a portfolio, we perform a qualitative and quantitative analysis of the underlying receivables and calculate the purchase price which is intended to offer us an adequate return on our investment after servicing expenses. After purchasing a portfolio, we actively monitor performance and review and adjust our collection and servicing strategies accordingly. . . .  Our objective is to maximize our return on investment in acquired consumer receivable portfolios. As a result, before acquiring a portfolio, we analyze the portfolio to determine how to best maximize collections in a cost efficient manner and decide whether to use our internal servicing and collection department, third-party collection agencies, attorneys, or a combination of all three options. [¶]   When we outsource the servicing of receivables, our management typically determines the appropriate third-party collection agencies and attorneys based on the type of receivables purchased. Once a group of receivables is sent to third-party collection agencies and attorneys, our management actively monitors and reviews the third-party collection agencies' and attorneys' performance on an ongoing basis. Based on portfolio performance considerations, our management will either (i) move certain receivables from one third-party collection agency or attorney to another, or (ii) sell portions of the portfolio accounts. Our internal collection unit, which currently employs approximately five collection-related staff, including senior management, assists us in benchmarking our third-party collection agencies and attorneys, and provides us with greater flexibility for servicing a percentage of our consumer

receivable portfolios in-house." (Asta Funding SEC filing on form 10-K for the period ending Sept. 30, 2014, original page 5 [Appendix B])

        9.     "We utilize our relationships with brokers, third-party collection agencies and attorneys, and sellers of portfolios to locate portfolios for purchase. Our senior management is responsible for: • coordinating due diligence, including, in some cases, on-site visits to the seller's office; • stratifying and analyzing the portfolio characteristics; • valuing the portfolio; • preparing bid proposals; • negotiating pricing and terms; • negotiating and executing a purchase contract; • closing the purchase; and • coordinating the receipt of account documentation for the acquired portfolios. [¶] The seller or broker typically supplies us with either a sample listing or the actual portfolio being sold, through an electronic form of media. We analyze each consumer receivable portfolio to determine if it meets our purchasing criteria. We may then prepare a bid or negotiate a purchase price. If a purchase is completed, management monitors the portfolio's performance and uses this information in determining future buying criteria including pricing. An integral part of the acquisition process is the oversight by our Investment Committee. This committee, established in January 2008, must review and approve all investments above $1 million in value. Voting criteria are more stringent as the size of the investment increases. The current members of the investment committee are the Chief Executive Officer, the Chief Financial Officer, the Senior Vice President, Vice President of Business Development/Support and the General Counsel and Chief Compliance Officer. As the Chairman Emeritus, Chief Executive Officer and Senior Vice President are related family members, at least one other officer must approve transactions. [¶] After determining that an investment should yield an adequate return on our acquisition cost after servicing fees, including court costs, we use a variety of qualitative and quantitative factors to calculate the estimated cash flows. The following variables are analyzed and factored into our original estimates: • the number of collection agencies previously attempting to collect the receivables in the portfolio; • the average balance of the receivables; • the age of the receivables (as older receivables might

be more difficult to collect or might be less cost effective); • past history of performance of similar assets — as we purchase portfolios of similar assets, we believe we have built significant history on how these receivables will liquidate and cash flow; • number of months since charge-off; • payments made since charge-off; • the credit originator and their credit guidelines; • the locations of the customers as there are states with better regulatory environments, better collection histories, which are better suited to attempt to collect in and, ultimately we have better predictability of the liquidations and the expected cash flows, all of which factor into our cash flow analysis; • financial wherewithal of the seller; • jobs or property of the customers within portfolios — this is of particular importance. Customers with jobs or property are more likely to repay their obligation and, conversely, customers without jobs or property are less likely to repay their obligation; and • the ability to obtain customer statements from the original issuer."   (Asta Funding SEC filing on form 10-K for the period ending Sept. 30, 2014, original page 8 [Appendix B])

10.    "We obtain and utilize, as appropriate, input including, but not limited to, monthly collection projections and liquidation rates from our third party collection agencies and attorneys, as further evidentiary matter, to assist us in developing collection strategies and in modeling the expected cash flows for a given portfolio."  (Asta Funding SEC filing on form 10-K for the period ending Sept. 30, 2014, original page 9 [Appendix B])

11.    Gary Stern is President and Chief Executive Officer of Asta.  (Admitted in Dkt. #67, ¶15; Lorri Smith Dep. [Appendix D], p. 12)

12.    Lorri Smith runs the outsourcing department for Asta Funding. (Appendix D, p. 8) Asta Funding pays her.  (Appendix D, p. 9) She reports to Gary Stern. (Appendix D, p. 12)

13.    Defendant **Palisades Collection** is a Delaware limited liability company headquartered at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632.  (Admitted in Dkt. #67, ¶16)

14.    Defendant Palisades Collection is engaged in the business of a collection

-6-

agency, using the mails and telephone system to collect delinquent consumer debts allegedly owed to others, namely other subsidiaries of defendant Asta. (Admitted in Dkt. #67, ¶13, 17; Lorri Smith Dep. [Appendix D], pp. 7-9, 12-13, 15-16, 17-18, 19, 21-22, 25, 29-30, 45, 47; 50-51)

15.    Defendant Palisades Collection is the plaintiff in numerous collection lawsuits. (Edelman Dcl. [Appendix E])

16.    Defendant Palisades Collection has one manager, Gary Stern. (Admitted in Dkt. #67, ¶20; Lorri Smith Dep.[Appendix D], 12)

17.    Defendant **Palisades Acquisition XVI** is a Delaware limited liability company with headquarters at 210 Sylvan Avenue, Englewood Cliffs, NJ 07632. (Admitted in Dkt. #67, ¶16)

18.    Defendant Palisades Acquisition XVI and other Palisades Acquisition entities are the plaintiff in numerous collection lawsuits. (Edelman Dcl. [Appendix E])

19.    Palisades Acquisition XVI, at times, engages in the collection of debts from consumers using the mail and telephone.   (Admitted in Dkt. #67, ¶24; Lorri Smith Dep. [Appendix D], pp. 7- 9, 12-13, 15-16, 17-18, 19, 21-22, 25, 29-30, 45, 47, 50-51)

20.    Defendant Palisades Acquisition XVI has one manager, Gary Stern. (Admitted in Dkt. #67, ¶25; Lorri Smith Dep. [Appendix D], pp 12, 3-19)

21.    **Relationship of Asta and Palisades Collections and Palisades Acquisition XVI.** Asta is a public company.  It owns Palisades Collection and Palisades Acquisition XVI.   (Admitted in Dkt. #67, ¶16, 26-27; Lorri Smith Dep. [Appendix D, pp. 7-9; (Asta Funding SEC filing on form 10-K for the period ending Sept. 30, 2014, list of subsidiaries [Ex. 21.1 thereto] [Appendix B])

22.    The financial statements of Palisade Acquisition XVI and Palisades Collection  are  combined for reporting purposes with Asta's financial statements.   (Admitted in Dkt. #67, ¶27)

23.    Asta has common officers/ managers and personnel with Palisades

-7-

Collections and Palisades Acquisition XVI.  (Admitted in Dkt. #67, ¶28; Lorri Smith Dep.

[Appendix D], p. 7)

      24.    Defendant **Aries Capital Partners, LLC**, doing business as Aries Data

Collections, is a New York corporation with principal offices at 243 Rt. 100, Somers, NY 10589.

It is in the business of a collection agency.  (Answer of Aries, Dkt. #155, answer to ¶30)   Since

2005, it has specialized in collecting judgments.  (Matthew Blake Dep., p. 5 [Appendix F])

      25.    Aries has had a relationship with Asta since about 2003.  (Appendix F,

pp. 6-7)   The debts placed were judgments.  (Appendix F, pp. 11-12)

      26.    Aries has a network of law firms to handle collection cases, and retained

firms in that network.   (Answer of Aries, Dkt. #155, answer to ¶32)

      27.    On its website, www.ariesdata.com, Aries states that it has conducted

business as   "postjudgment recovery specialists since 1999". The website refers to network of

"partner"  collection law firms that Aries works with, stating:

> Aries Data Collections has been an industry leader delivering best-in-class post judgment
> recovery, litigation and collection services  since 1999. Our extensive partnerships have
> enabled us to manage all phases of the collection process including asset location, skip
> tracing, and our speciality niche area of post judgment enforcement  and litigation.
>
> Our client list includes some of the largest debt buyers in the  industry, collection
> agencies, collection attorneys, schools,  management companies as well as many other
> segments of the  financial and medical fields.
>
> Aries has partnered with the most highly skilled law firms specializing in post judgment
> collections throughout the United States.
>
> Each firm is a member of the National Association of Retail  Attorneys, (NARCA) and
> must complete a comprehensive  onboarding process in order to become a partner in our
> network.  Dedicated Attorney Network Managers oversee each firm  communicating on a
> daily bases to ensure each account placement  is receiving maximum focus and driving the
> highest returns.
>
> Our highly skilled managers oversee every aspect of the day-to-day operations including
> client communications, proprietary  waterfall process for asset location, skip tracing,
> compliance  oversight, audit functions, and custom reporting. This meaningful
> involvement of process and compliance with all FDCPA and  CFPB regulations creates
> value and offers our clients an added  layer of security.   (Answer of Aries, Dkt. #155,
> answer to ¶34; web address identified at Matthew Blake Dep. [Appendix F], p. 59)

28.     Defendant **Moss** is an attorney practicing law in Fort Wayne, Indiana. (Admitted in Moss Answer, Dkt. #66,  ¶35); Parker Moss deposition [Appendix G] p. 6)  He regularly collects consumer debts owed to others from Indiana residents, including debts based on Indiana state court judgments.  (Appendix G, p 16)  He uses the mails and telephone system in connection with such activities, and regularly sends demand letters to consumers (Appendix H contains the letters to Plaintiffs) when becoming involved in a case. (Appendix G, pp. 13, 16-17, 41-42)  He is a debt collector as defined in the FDCPA.

29.     **Moss PC.**  Defendant Moss  practices through an Indiana professional corporation, Parker L. Moss PC, with an office address of 127 West Berry Street, Suite 333, P.O. Box 10839, Fort Wayne, IN, 46854. (Admitted in Moss Answer, Dkt. #66,  ¶36; Moss Dep. [Appendix G], p  6)  Moss is the president of  Moss P.C., and responsible for directing all of the actions complained of herein. (Admitted in Moss Answer, Dkt. #66,  ¶36)  Moss PC, uses the mails and telephone system in connection with such activities, and regularly sends demand letters to consumers (Appendix H contains the letters to Plaintiffs) when becoming involved in a case. (Appendix G, pp. 13, 16-17, 41-42) The letters are generated by the Collection Partner computer system.  (Appendix G, pp. 8- 9, 41-42)  Moss PC is a debt collector as defined  in the FDCPA.

30.     Defendant Moss PC, maintains a web site which states: "Commercial & Consumer Collections [¶]  Our collection law firm provides commercial collection services to all companies having debtors in the [sic] Indiana. Parker Moss has tremendous experience in the collection of bad debt claims and employs dedicated and determined collection personnel who strive every day be the best they can be. We not only pursue collection of each and every debt placed with our collection firm but we attempt to do it in such a way that it ensures the greatest success and the most positive results for our clients. We will give you our best efforts and will design a collection campaign for your company that is not only suitable but results oriented and successful. We can make a big difference in your bottom line.   [¶]  We are a collection law firm

-9-

and not a collection agency. We have the ability to litigate accounts throughout the State of Indiana which enables us to achieve a higher than average recovery ratio for our clients. We look forward to speaking with you about your collection claims and if you have any questions that this website does not answer to your satisfaction, please do not hesitate to contact our office at 800-433-1589 toll free or locally at 260-422-1589 for further information on our firm.  [¶]  Our collection attorney service provides competitive contingent rates, exemplary service and professional results and we want you to know that not only are we highly qualified to handle your Indiana debt collection portfolio but we are true collection professionals and we'll do everything in our power to ensure a successful campaign for your company. We want your business and want you to know that we will work hard every business day to keep it."

(http://parkermosslaw.com/)

       C.      **Palisades-Aries Agreements**

      31.      Asta Funding's "objective is to maximize our return on investment on acquired consumer receivable portfolios. As a result, before acquiring a portfolio, we analyze the portfolio to determine how to best maximize collections in a cost efficient manner and decide whether to use a third-party collection agency or an attorney. [¶]  Therefore, if we are successful in acquiring the portfolio, we can promptly process the receivables that were purchased and commence the collection process. Unlike collection agencies that typically have only a specified period of time to recover a receivable, as the portfolio owner, we have significantly more flexibility and can establish payment programs.  [¶]  We presently outsource a significant amount of our receivable servicing to third-party collection agencies and attorneys. Our senior management typically determines the appropriate third-party collection agency and attorney based on the type of receivables purchased. Once a group of receivables is sent to a third-party collection agency or attorney, our management actively monitors and reviews the third-party collection agency's and attorney's performance on an ongoing basis. Our management receives detailed analyses, including collection activity and portfolio performance, from our internal

-10-

servicing departments for the purpose of evaluating the results of the efforts of the third-party collection agencies and attorneys. Based on portfolio performance guidelines, our management will reassign certain receivables from one third-party collection agency or attorney to another if we believe such change will enhance collections.  [¶]   At September 30, 2014, approximately 37% of our portfolio face value was serviced by five collection organizations. We have servicing agreements in place with these five collection organizations as well as all other third-party collection agencies and attorneys. These servicing agreements cover standard contingency fees and servicing of the accounts." (Asta Funding SEC filing on form 10-K for the period ending Sept. 30, 2014, original page 10 [Appendix B])

32.    Palisades Collection entered into an Attorney Network Collection Agreement with Aries on January 15, 2009, amended June 11, 2009.  (PAL000001-15 [Appendix I], authenticated by Palisades Defendants Responses to Production of Documents [Appendix J], p. 20, #15-16; Matthew Blake Dep., pp. 9-10 [Appendix F]; Lorri Smith Dep. [Appendix D], pp. 15-16)  The agreement provided for Aries to render services to Palisades Collection and Palisades Acquisition XVI, LLC.  In it, Aries undertook to use its best efforts to collect receivables placed with it, to forward receivables to attorneys and law firms in a network it  maintained, to settle or compromise receivables for stated percentages, and to maintain records of all payments, credits and other collection activities.  Palisades Collection had the right to audit and inspect records relating to the receivables it placed.  Aries was authorized to receive funds on the receivables and required to account to Palisades Collection for such funds.

33.    Representatives of Asta/ Palisades Collection / Palisades Acquisition did in fact visit Aries and audit at least quarterly.  (Matthew Blake Dep. [Appendix F], pp. 32-33) It was not clear which Asta-related company or companies they were working for.  (Appendix F,  p. 33) Lorri Smith visited on about 5 occasions.  (Lorri Smith Dep. [Appendix D], p. 36) The auditors would review information in Aries' computer system, review the spreadsheets received from Palisades Collection and provided to the network attorneys, review files, and ask for corrective

-11-

actions regarding the handling of the accounts.  (Appendix F, pp. 33-34, 72-3) They never told Aries to change the names on the cases.  (Appendix F, p. 34)   Aries did get a copy of the Purchase and Sale Agreement, showing that the debts had been sold by the Dead Companies to Palisades Acquisition XV.  (Appendix F, pp. 34-5)

       34.     Asta also had remote access to Aries' computers.  (Lorri Smith Dep. [Appendix D], p. 37)

       35.     Aries remitted funds to Asta weekly.  (Appendix D, p. 45)

       36.     Asta Funding stated that "Our telecommunications and technology systems allow us to quickly and accurately process large amounts of data necessary to purchase and service consumer receivable portfolios. In addition, we rely on the information technology of our third-party collection agencies and attorneys and periodically review their systems to ensure that they can adequately service the consumer receivable portfolios outsourced to them."  (Asta Funding SEC filing on form 10-K for the period ending Sept. 30, 2014, original page 15 [Appendix B])

       37.     Aries sent Asta monthly inventory reports, showing what Aries was doing with the debts placed with Aries for collection.  (Lorri Smith Dep. [Appendix D], p. 33) Aries informed Asta what attorneys the accounts had been placed with.  (Appendix D, pp. 34-5)

       38.     Debts placed by Palisades Collections were about 45% of Aries' business during 2013-2019.  (Matthew Blake Dep. [Appendix F], p. 40)

    **D.**    **Aries-Moss Agreements**

       39.     Aries entered into a written Collection Service Agreement with Moss PC, dated Dec. 10, 2010 (00042-49[2] [Appendix K], authenticated at Appendix F, pp. 59-60 and Appendix G, p. 15)  This agreement designated Aries as "client" and Moss PC as "attorney."  It provided that Aries would place accounts for collection and legal activity with Moss PC.  Moss

_____

    [2] Documents numbered without any prefix were produced by Moss.

PC "agrees to undertake such collection activity in connection with such accounts and to use due diligence and discretion and experience it believes will best affect the efficient collection of such accounts but subject to the work standards required by [Aries] as set forth in Exhibit A attached hereto." Moss PC would be paid a contingent fee. (00042) Moss PC was authorized to endorse checks and deposit them into its trust account. (00044) Moss PC was authorized to negotiate and settle accounts. It was given certain settlement authority in the agreement and would contact Aries if it received offers outside that authority. (00044) Moss PC was required to account for proceeds and respond to requests for information. (00044) Aries had the right to inspect and audit Moss PC's operations and records. (00045) The work standards (00048-9) provided that accounts were to be acknowledged and an initial demand letter sent within 48 hours of placement, that addresses were to be verified within 30 days, and that suits or postjudgment collection activities were to be initiated within specified times.

40.     Aries tracks the liquidation rates of network attorneys to see if the network attorneys are doing their jobs. (Matthew Blake Dep. [Appendix F], p. 66)

41.     Communications between Moss PC and Aries were primarily by email. (Moss Dep. [Appendix G], pp. 13, 16-17)

42.     All of the debts that Aries placed with Moss PC were old judgments. (Appendix G, p. 17)

### E.     Transfer of Debts by Dead Companies

43.     In 2007, Palisades Acquisition XV, LLC, a subsidiary of Asta, purchased approximately $6.9 billion face amount debts from a group of companies: Great Seneca Financial Corporation, Platinum Financial Services Corporation, Monarch Capital Corporation, Colonial Credit Corporation, Centurion Capital Corporation, Sage Financial Limited and Hawker Financial Corporation (hereinafter "Dead Companies"). (Purchase and Sale Agreement, PAL000016-88 [Appendix L], authenticated by Palisades Defendants' Responses to Plaintiffs' First Discovery Requests [Appendix J], p. 17, response to #4; Lorri Smith Dep. [Appendix C], pp.

12-13) The price was about $300 million, or less than 5 cents on the dollar.  (SEC filing on form
10-K for the period ending Sept. 30, 2014, original page 7 [Appendix B])

       44.    The portfolio purchased by Palisades Acquisition XV was not 100% of the
debts owned by the Dead Companies. Section 2.2 of the Purchase and Sale Agreement, "Pre-
Closing Adjustment," provided that "The Purchase Price amount stated in Section 1.6 shall be
adjusted as follows: The Sellers shall prepare a final statement of Accounts as of the Cut Off Date
( the "Closing Statement"). The Sellers may retain any Account if (i) the Sellers determine, in
their sole discretion, that as of the Cut Off Date the representations set forth in Section 3.3 are not
true and correct with respect to such Account; or (ii) the Sellers determine, in their sole
discretion, that there is a pending or threatened suit, arbitration, bankruptcy proceeding or other
legal proceeding or investigation relating to such Account, or the Debtor of such Account,
naming the Sellers or otherwise involving the Sellers' interest therein in a manner unacceptable to
the Sellers, or the Sellers otherwise determine, in their sole discretion, that such matter cannot be
resolved and/or that the Sellers' interest therein cannot be adequately protected without the
Sellers owning such Account, provided that in either case the Sellers shall, if requested by Buyer,
in writing describe such suit or investigation in detail reasonably acceptable to Buyer. The
Purchase Price will be decreased by an amount equal to the product of (i) outstanding balance as
of the Cut Off Date of any such retained Account and (ii) the Purchase Price Percentage. The
Sellers will notify the Buyer of the adjusted Purchase Price on or prior to the Closing Date.
Sellers shall have a right to provide replacement accounts for those retained as Pre-Closing
Adjustments of comparable value."  Sections 8, "THE SELLERS' RIGHT TO REPURCHASE
ACCOUNTS," and 8.1, "Accounts Affected," provided that "Sellers shall have the right to
repurchase any Accounts that have not been paid in full, released or compromised by Buyer, if
the Sellers determine that there is a pending or threatened suit, arbitration, bankruptcy proceeding
or other legal proceeding or investigation relating to an Account or a Debtor naming any one or
more of the Sellers or otherwise involving the Sellers' interest therein in a manner unacceptable

to the Sellers, or the Sellers otherwise determine, in its/their sole discretion, that such matter cannot be resolved and/or that the Sellers' interest therein cannot be adequately protected without the Sellers owning such Account."

45.     In the early 2000s there was a collection law firm named Wolpoff and Abramson, headquartered in Maryland. Wolpoff and Abramson established companies to buy debts – the companies identified above as the "Dead Companies." (Matthew Blake Dep. [Appendix F], pp. 13-14, 26-7)

46.     The Purchase and Sale Agreement provided (§7.1) that Palisades Collection

and affiliates were not to use  the names of the Dead Companies except to identify the prior owner of the debt.

47.     To hold this portfolio, Asta created a new subsidiary, Palisades Acquisition XVI, and had the debts transferred to it.  (Lorri Smith Dep. [Appendix D], pp. 8-9, 24)

48.     In many cases, suits had been filed or judgments obtained in the name of the Dead Companies prior to the 2007 portfolio sale.   (Appendix D, p. 30)

49.     In March 2009, the Dead Companies were dissolved. [Records from Maryland Secretary of State [Appendix M]

**F.     Collection of Dead Company Debts**

50.     Palisades Collection hired four "servicers" to manage collection of the portfolio. One of these was Aries.   (Lorri Smith Dep. [Appendix D, pp. 7-8, 15, 20-22; Lorri Smith Affidavit [Dkt. #123])  These were also known as "attorney networks."  (Appendix D, p. 21)

51.     Aries and the other "servicers" hired attorneys to pursue lawsuits and take other collection actions.  Moss was one of the attorneys hired by Aries.  (Aries Answer, Dkt. #155, answer to ¶50; Matthew Blake Dep., pp. 19-20 [Appendix F]; Appendix D, pp. 25-26) All of the debts Aries sent to Moss were judgments. (Moss Dep. [Appendix G], p 17; Appendix F, p.

22)  They were five years old or more.  (Appendix G, p. 25)

       52.    From time to time, Aries was provided by Palisades Collection with spreadsheets containing information about the judgments it was to collect. (Appendix G, pp 16: 25-17:15; Appendix F, pp. 17-18; Appendix D, p. 31)

       53.    Aries electronically transmitted to the attorneys it hired, including Moss PC, the portions of the data on the spreadsheets that pertained to the judgments they were to collect.  (Appendix G, pp. 16- 17; Appendix F, pp. 20-21)   The information included the judgment date and amount, plaintiff's name, payments made, current balance, an interest calculation, and the name, address and employment information of the judgment debtor.  Actual court documents were not provided by Aries.  (Appendix G, pp. 17-19) If a debtor disputed the debt, Moss would telephone the court and order a copy of the judgment.  (Appendix G, p. 19)

       54.    Moss PC transferred the contents of the spreadsheet to its own Collection Partner system.  (Appendix G, p. 21)

       55.    Some of the plaintiff's names on the accounts transferred included the Dead Companies.  (Appendix G, pp. 22, 27-8) Aries did not explain what Centurion Capital or Great Seneca was.  (Appendix G, p. 28-9)

       56.    Until Mr. Ciesniewski raised the issue in connection with the collection case against him, Moss was not informed that the judgments had been assigned from the entities listed on the spreadsheet.  (Appendix G., pp. 32-33)

       57.    Appendix N (00033-37)  is the data transmission for Ciesniewski. Appendix O (00038-41) is that for Norman.  Both are  authenticated at Blake Dep. [Appendix F], pp. 24-5 and Moss Dep. [Appendix G], pp. 19-20.  The transmission did not include the name of the current owner.  (Appendix F, p. 70)

## G.  Problems with Assignments

       58.    The owner of Aries, Matthew Blake, testified that he relied on Palisades

-16-

Collection to tell Aries that a particular debt had been transferred.  (Blake Dep. [Appendix F], pp. 42-43)

59.     During 2012-2015, a number of judicial decisions raised questions about the validity of the  assignment of specific accounts from the Dead Companies to Palisades Acquisition XVI:

> a.     *Centurion Capital Corp. v. Guarino*, No. 11117/05, 35 Misc.3d 1219(A), 2012 WL 1543286, 2012 N.Y. Slip Op. 50749(U) (N.Y.City Civ.Ct., April 30, 2012);
>
> b.     *Great Seneca Financial Corp. v. Ogbunwale*,  47 Misc.3d 322, 2 N.Y.S.3d 868 (N.Y.City Civ. Ct. 2015);
>
> c.      *Colonial Credit Corp. v. Beyers,* 14582/05, 46 Misc.3d 1221(A), 15 N.Y.S.3d 711 (Table), 2015 WL 792058, 2015 N.Y. Slip Op. 50153(U) (N.Y.City Civ.Ct.).
>
> d.      *Powell v. Palisades Acquisition XVI, LLC,* 782 F.3d 119 (4th Cir. 2014), and Maryland proceedings described therein.

60.     Asta Funding had a "Collections Department" manual (Appendix P, authenticated at Lorri Smith Dep. [Appendix D], p. 57) that provided that "A dispute is when a debtor notifies us that they don't agree with the balance on the account, that the account is fraudulent, paid prior or that they believe the debt is not owed for some other reason."  (PAL 000116) However, "when the debtor requests proof of Palisades' ownership of the account," "This is not considered a dispute."  (PAL 000117)

## H.     Proceedings in Names of Dead Companies

61.     In multiple instances, attorneys collecting debts allegedly owned by Palisades Acquisition XVI continued collection activities in the name of the Dead Companies after they were dissolved, without informing  the court or the debtors that the debt was now allegedly owned by Palisades Acquisition XVI.  (Aries Answer, Dkt. #155, answer to ¶48)

62.     Moss did not realize that Centurion Capital may have been dissolved until he received an email from counsel for Ciesniewski in 2015.  (Moss Dep. [Appendix G], p. 38 and documents 00013-17 [Appendix Q])

63.     Moss and Moss PC have undertaken post judgment collection actions in the names of the Dead Companies and without reference to any assignment to any other party that resulted in the payment of money other than by court order in 68 cases during the two years prior to the filing of the Ciesniewski lawsuit, of which 40-50 were within the one year prior to filing. (Moss Dep. [Appendix G], pp. 45-6)

64.     When Moss PC received a spreadsheet from Aries containing information about judgments Moss PC was to collect, Moss PC took  the name of the plaintiff and amount of the judgment from the spreadsheet and put it into the Collection Partner software.  The software inserted the same information and inserted it into collection letters and documents.  (Moss Dep. [Appendix G, p. 42)

65.     Defendant Parker Moss regularly entered appearances for the  Dead Companies, even though he had not been retained by the Dead Companies, and the cases had been referred to him by Aries, who supplied documentation that Aries claimed was from Palisades XVI and Palisades Collection. (Moss Dep. [Appendix G], pp. 15-16; 22-29)

66.     At no time did Moss have proof of an assignment of an individual account on the cases in which he appeared.  (Appendix G, pp. 32-33, 41, 60-61) When he requested an assignment, "the assignment they sent me just references that they purchased a bulk amount of judgments without identifying any individual judgments."  (Appendix G, p. 33) These were 00023 and 00024 [Appendix R] (Appendix G, pp. 40-41) Moss never received assignments from Aries that referenced a specific debtor.  (Appendix G, p. 41)  Palisades Acquisition XVI did not have assignments showing that specific debts identified by name and account number were transferred to Palisades Acquisition XV or XVI.

67.     After this action was filed, Aries replaced Moss with Levy & Associates as

attorney on some of the Indiana cases – the ones on which payments were not being received –
involving Dead Companies. (Deposition of Kara A. Graham [Appendix S], pp. 30-55)  Moss kept
those files on which payments were being made.  (Moss Dep. [Appendix G], p. 49) Consumers
were instructed to make payments to Moss PC and Moss PC sent the money to Aries.  (Appendix
G, pp. 52-3)

68.   The attorney at Levy & Associates who handled the Indiana cases was
Kara

Graham.   (Appendix S, pp. 46-47)  During 2018-19, Graham filed motions for "transfer of
interest" in at least 48  cases that had been transferred to her[3]  that were still active in the names
of the Dead Companies (dissolved in 2009), stating that Palisades Acquisition XVI now owned
the judgments.  (Appendix S, pp. 18-58 and Exhibits [Appendix T]).  The motions were
supported by documents entitled "assignment of judgment" (e.g., Appendix T, pages Graham 4,
25, 122, 137, 222)  but in fact were affidavits by a representative of Palisades Acquisition XVI
stating that it had purchased the judgment, as opposed to an affidavit or document from the seller
stating that it had sold the judgment.

69.   Even after it was pointed out to him that he was claiming to represent
companies that no longer existed and weren't his clients, Moss kept his appearances on file for
the Dead Companies and continued collection activities.   (Moss Dep. [Appendix G], pp. 49-50)

70.   When paid by a defendant, Moss would file satisfactions of judgment

---

[3] Yolanda Scott; Elizabeth Pilkenton; Erica Tate; Kathy Brown; Tehran Nobles; Sherrell
Lomax;  Eric Woodward; Carnita Bashley; Angela Erfman; Amie Wilson; Leslie Hoff; Phillip
Haugabook; Cassandra Muhammad; Ollie Leshore; Patrick Coffey; Pam Gabbard; Mary Ridens;
Michele Goins; Kenji Patton; Timothy Ciesielski; Johnna Magers-Miller; Lemont Marshall;
Phillip Duncan; Carol Browning; Rachel Hughes; Nancy Syphers; Dianna Ambrose; Jamie
Jenkinson; Don Dorris; Della Furman; Curtis Lohr; Rita Cooning; Candida Idaquez; Wilbur
Lewis; David Clinger; David Lee; Dea Collins; Danielle Winfrey; Jodella Smith; Amy Wolf;
David McClung; James Clayton; Erikka Alexander; Teresa Cook; Christopher Lynch; Denise
Smith; Antionette Taylor; Shawn Biggs.

allegedly on behalf of the Dead Companies.  (Appendix U)   Moss had no authorization from any
of the Dead Companies to do so.

71.    Copies of papers stating that Moss was collecting for the Dead Companies
were  sent by mail to the various consumers being collected upon. (Moss Dep. [Appendix G], pp
41-42)

I.     **Facts Relating to Plaintiff Ciesniewski**

72.    On July 11, 2006, Centurion Capital Corporation  filed a complaint
against=

Mr. Ciesniewski for the sum of $12,655.19.  (State court complaint [Appendix V]) The debt was
a Discover credit card used for personal, family or household purposes and not for business
purposes.  (Ciesniewski Dep. [Appendix A], pp. 27-28)   The complaint alleged that Centurion
was entitled to collect based on "assignment(s) by original creditor(s) to [Centurion] and that
[Centurion] is the actual and bonafide owner of the Instrument."  (Appendix V)

73.    On November 28, 2006,  Centurion obtained a judgment in the amount of
$12,655.19 (Appendix W)

74.    On April 14, 2015, Parker Moss filed an Appearance (Appendix X) and
Motion for  Proceedings Supplemental (Appendix Y) in the Centurion Capital case against Mr.
Ciesniewski, claiming to represent Centurion, and seeking collection of the Centurion debt.

75.    In the Motion for Proceedings Supplemental,  Moss represented
"[t]hat the plaintiff owns a judgment obtained in this court against the judgment defendant, James
Ciesniewski on November 28, 2006, for the sum of $20,719.88 and costs."  Moss had documents
reflecting this amount sent to Mr. Ciesniewski and his employer.  (Appendix Y)

76.    According to an "Order to Answer Interrogatories, Notice of Hearing and
Interrogatories" prepared by Moss (Appendix Z) and an "Order to Appear in Court to Individual
Judgment Defendant," also prepared by Moss (Appendix AA),  Mr. Ciesniewski was required to
pay $20,719.88 plus post judgment interest of $13,855.50 – a total of $34,575.38  –  plus court

-20-

costs.

77.     The amount in Appendix Z and Appendix AA came from Aries'
spreadsheet for the judgment against Ciesniewski, and was wrong.  (Moss Dep. [Appendix G],
pp. 36-37) Aries had added interest to the amount of the judgment and included the total as the
amount of the judgment.  (Appendix G, p. 37) Then, Moss PC calculated interest from the date of
the judgment, resulting in double counting of interest.  (Appendix G, pp. 37-8)

78.     The maximum amount owed by Mr. Ciesniewski under the November 28,
2006 judgment (Appendix W) was $25,045.94.

79.     The original judgment was $12,655.19. (Admitted in Aries answer, Dkt.
#155, answer to 87)  Interest from May 31, 2006 to April 14, 2015 at 8% is $12,390.75. The total
is $25,045.94.  Mr. Ciesniewski noted that the amount claimed seemed too high  (Ciesniewski
Dep. [Appendix A], pp. 33, 69) and hired counsel.  (Id., 46).

80.     Mr. Ciesniewski suffered harm as a result, including the cost of responding
to the legal proceedings, the cost of hiring counsel, time taken off work to meet with counsel and
attend the state court proceedings, stress and aggravation.  (Ciesniewski Dep. [Appendix A], pp.
45, 50-67; 94-96)  Mr. Ciesniewski suffers from high blood pressure and heart disease.  (Id., p.
62)

81.     Though Asta, the Palisades entities, and Aries were not named in the
documents filed in Marion Superior Court, (a) the Palisades entities hired Aries to collect the
debt; and Aries contracted with Moss to collect on the Centurion Judgment.  (Aries Answer, Dkt.
#155, ¶60, and Palisades Answer, Dkt. #67, ¶60)   Moss had not been authorized to act by
Centurion and did not represent it.

82.     After Ciesniewski was represented by counsel, Moss requested proof of
assignment from Aries.  In response, Aries provided two documents which did not refer to any
specific debt.  (Matthew Blake Dep. [Appendix F], pp. 70-71, 78-83; Moss Dep. [Appendix G],
pp. 40-41; Appendix R).  The documents refer to a TXT file, but Mr. Blake has never seen it.

(Appendix F,  p. 78)

    83. The documents used by Defendants in the case of Mr. Ciesniewski are

typical of the documents in all of the cases complained of herein.

## III. THE OVERALL COURSE OF CONDUCT COMPLAINED OF VIOLATED THE FDCPA

    The FDCPA was violated in each instance where collection activities were conducted on

behalf of a Dead Company without disclosure of the fact that the Dead Company no longer was

the current creditor or owner of the debt, in that:

    A. Defendants are operating under a name other than their true name, in violation of

       15 U.S.C. §1692e(14).

    B. Defendants misrepresented who claims to own the judgment, in violation of 15

       U.S.C. §§1692e, 1692e(2) and 1692e(10).

Section 1692e provides:

§ 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means
in connection with the collection of any debt. Without limiting the general application of
the foregoing, the following conduct is a violation of this section: .. .

(2) The false representation of--

    (A) the character, amount, or legal status of any debt; . . .

(10) The use of any false representation or deceptive means to collect or attempt to collect
any debt or to obtain information concerning a consumer. . . .

(14) The use of any business, company, or organization name other than the true name of
the debt collector's business, company, or organization. . . .

    The "true name" requirement of 15 U.S.C. §1692e(14) requires a debt collector to use its

full business name, the name under which it usually transacts business, or a commonly used

acronym:

The FTC has interpreted the "true name" requirement in §1692e(14) to permit a debt
collector to "use its full business name, the name under which it usually transacts
business, or a commonly-used acronym[,]" as long as "it consistently uses the same name
when dealing with a particular consumer." *Statements of General Policy or Interpretation*

*Staff Commentary On the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097, 50107 (Dec. 13, 1988) [hereinafter *FTC Commentary*]. That is a sound interpretation of the statutory requirement, and we adopt it as our own.

*Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 281 (3d Cir. 2018).  See also, *Peter v. GC Servs. L.P.*, 310 F.3d 344, 352 (5th Cir. 2002) (by using "Department of Education" as the return addressee on an envelope, "GC Services represented the sender of the mail as the Department of Education, when in fact it was GC Services. Thus, GC Services used the Department of Education name as its own, violating §1692e(14).").  It may not use the name of another debt collection entity.  *Tang v. Med. Recovery Specialists, LLC*, 11cv2109, 2011 WL 6019221, at *4 (N.D. Ill. July 7, 2011).

"Great Seneca" and the other names of the "Dead Companies" are not the full business name of Palisades Acquisition XVI, the name under which it usually transacts business, or a commonly used acronym.  Rather, it is the name of the purported assignor of the debt.

By using the name of the "Dead Company," defendants represented that the debt was still owned by the "Dead Company," when it was not.   This had the effect of concealing the need for inquiry into whether Palisades Acquisition XVI could establish a valid chain of title.  Use of the "Dead Company" name thus amounted to a "false, deceptive, or misleading representation or means in connection with the collection of any debt," a "false representation of . . . the character . . . or legal status of any debt; . . . " and the "use of any false representation or deceptive means to collect or attempt to collect any debt . . . ."

## IV.   ADDITIONAL VIOLATIONS WERE COMMITTED IN THE CASE OF CIESNIEWSKI

Additional violations were committed in the case of Plaintiff Ciesniewski.  According to the "Motion for Proceedings Supplemental," filed by Moss and Moss PC, defendants demanded Mr. Ciesniewski pay a total amount of $34,575.38.  However, the maximum amount owed by Mr. Ciesniewski, as determined by the November 28, 2006 Summary Judgment, was only $25,045.94.  The original  judgment was $12,655.19.  Interest from May 31, 2006 to April 14,

2015 at 8% is $12,390.75.  The total is $25,045.94.

Defendants violated the FDCPA, 15 U.S.C. § 1692e, when they falsely represented the amount of this debt.

## V.       THE VIOLATIONS WERE MATERIAL

Representations by a debt collector as material if a consumer would have considered them "a factor in his decision-making process" in responding to the collector's claim.  *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012).

Fact relating to a potential defense to a collection action are "material," whether or not a court ultimately agrees that the defense is well-founded.  *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326-27  (6th Cir. 2012).  Misrepresentation of who owns and has the right to collect a debt are material.  E.g., *Cox v. Hilco Receivables, L.L.C.*, 726 F.Supp.2d 659, 666 (N.D. Tex. 2010) ("Improperly identifying oneself as the owner of a debt is certainly a misrepresentation of that debt's legal status"); *Bourff v. Rubin Lublin, LLC*, 674 F.3d 1238, 1241 (11th Cir. 2012) (misidentification of BAC as creditor); *Shoup v. McCurdy & Candler, LLC*, 465 Fed. Appx. 882, 885 (11th Cir. 2012) (misidentification of MERS as creditor);  *Grant-Hall v. Cavalry Portfolio Services, LLC*, 856 F.Supp.2d 929, 945 (N.D. Ill. 2012) (misrepresenting that CPS had the right to file suit); *Manlapaz v. Unifund CCR Partners*, 08cv6524, 2009 WL 3015166, *5 (N.D. Ill. Sept. 15, 2009) (suing on a debt it did not own); *Matmanivong v. Unifund CCR Partners*, 08cv6415, 2009 WL 1181529 *5 (N.D. Ill. April 28, 2009) (same); *Hepsen v. J.C. Christensen and Associates, Inc.*,  8:07cv1935, 2009 WL 3064865, *5 (M.D. Fla. Sept. 22, 2009) (false representation of creditor's name); *Braatz v. Leading Edge Recovery Solutions, LLC*, 11cv3835,  2011 WL 9528479 *1 (N.D. Ill. Oct. 20, 2011) (identifying two companies might cause consumer to be concerned about the possibility she was being defrauded or that she might pay the incorrect creditor and continue to have outstanding debt).   Such misrepresentations may affect how a consumer responds to the collection efforts.  *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012).  Specifically, they may dissuade a consumer from asking for proof of an assignment

or challenging as insufficient the type of documentation (an affidavit by the alleged transferee) that Defendants were able to provide.

Misstating the amount of a debt by thousands of dollars is also material. *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012); *Coyne v. Midland Funding LLC,* 895 F.3d 1035, 1038 (8th Cir. 2018) ("an attempt to collect a debt not owed is a material violation"); *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 127 (4th Cir. 2014); *Untershine v. Encore Receivable Management, Inc.,* 18cv1484, 2019 WL 3766564, at *3 (E.D. Wis. Aug. 9, 2019) ("Knowing the amount of the debt is 'substantive information,' . . . central to a consumer being able to intelligently respond to an effort to collect a debt.").

## VI.     EACH DEFENDANT IS A DEBT COLLECTOR

The FDCPA defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6).  There are thus two tests: (1) defendant regularly collects debts for another; and (2) defendant's principal business purpose is the collection of debts, regardless of who owns them. *Barbato v. Greystone Alliance, LLC,* 916 F.3d 260, 268 (3d Cir. 2019).

### A.     Moss and Moss PC

Moss and Moss PC have a substantial consumer collection practice and regularly collect debts allegedly owed to others.  (¶¶28-30) As collection attorneys, they are classic "debt collectors." *Heintz v. Jenkins*, 514 U.S. 291 (1995).

### B.     Aries

Aries regularly collects debts for others.  It "has been an industry leader delivering best-in-class post judgment recovery, litigation and collection services since 1999."  "Our highly skilled managers oversee every aspect of the day-to-day operations including client

communications, proprietary waterfall process for asset location, skip tracing, compliance oversight, audit functions, and custom reporting. This meaningful involvement of process and compliance with all FDCPA and CFPB regulations creates value and offers our clients an added layer of security." (¶27)

### C.    Asta Funding, Palisades Collection and Palisades Acquisition XVI

The principal business of Asta Funding, Palisades Collection and Palisades Acquisition XVI is the collection of debts. "Asta Funding, Inc., together with its wholly owned significant operating subsidiaries Palisades Collection LLC, Palisades Acquisition XVI, LLC . . . has been engaged in the business of purchasing, managing for its own account and servicing distressed consumer receivables, including charged off receivables, and semi-performing receivables since 1994 . . . ." (¶5)  Asta Funding raised public capital to purchase debts, arranged for their purchase, and performed a qualitative and quantitative analysis of the receivables. (¶¶5-10) It formed Palisades Acquisition XVI to hold the Dead Companies portfolio.  Asta Funding, Palisades Collection and Palisades Acquisition XVI are run by the same person.  (¶11, 12, 16, 20)

Palisades Acquisition XVI engages in direct debt collection when it files or prosecutes thousands of lawsuits against consumers. (¶18-19)  Palisades Collection directed the collection activities on the debts and engaged in direct debt collection activities itself. (¶14-15)

The fact that Asta and Palisades Acquisition XVI are debt buyers does not shield them from liability under the FDCPA. *See, e.g., Barbato v. Greystone Alliance, LLC,* 916 F.3d 260, 268 (3d Cir. 2019) (holding that the FDCPA applied to a debt buyer because "it buys consumer debt and hires debt collectors to collect on it" and the "existence of a middleman does not change the essential nature—the 'principal purpose'—of [the debt buyer]'s business," namely debt collection); *Arango v. GMA Investments, LLC,* 18cv9813, 2019 WL 1916202 at *3 (D.N.J. April 30, 2019) (citing *Barbato*); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325 (7th Cir. 2016).

## VII.    EACH DEFENDANT IS LIABLE FOR THE CONDUCT

## A.    Moss and Moss PC

Moss and Moss PC actually conducted the litigation in the name of the Dead Companies. (¶61-70, 71-82))

## B.    Aries

The relationship of Aries to Moss and Moss PC is client and attorney, or principal and agent. *Janetos v. Fulton Friedman & Gullace, LLP*, *supra*. As in all attorney-client relationships, the attorney is an independent contractor, but also an agent. *Restatement (Second) of Agency* §14N and comment a (1958). Since both Aries, Moss and Moss PC are all debt collectors, client Aries is responsible for the improper conduct of the attorneys it hired. *Janetos v. Fulton Friedman & Gullace, LLP*, *supra*.

## C.    Asta Funding, Palisades Collection and Palisades Acquisition XVI

The relationship of Asta and its affiliates Palisades Collection and Palisades Acquisition XVI to Aries is also that of principal (Asta and affiliates) and agent (Aries). All are debt collectors. Asta and its affiliates are therefore liable for the acts of Aries and its agents. *Janetos v. Fulton Friedman & Gullace, LLP*, *supra; Barbato v. Greystone Alliance, LLC, supra.*

## VIII.   CONCLUSION

The Court should grant summary judgment against defendants Moss, Moss PC, Aries, Asta, Palisades Collection and Palisades Acquisition XVI on the issue of their liability under the FDCPA.


Respectfully submitted,


/s/Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman (IL 0712094)
Cathleen M. Combs (IL 0472840)
**EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC**

-27-

20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com


Keith R. Hagan
**HAGAN AND WHITE, LLP**
201 N. Illinois Street   Floor 16
Indianapolis, IN 46204
(317) 531-4575
keith@hlocl.com

Steven R. Hofer
**CONSUMER LAW OFFICE OF STEVE HOFER**
8888 Keystone Crossing, Suite 1300
Indianapolis, IN 46240
(317) 662-4529
Hoferlawindy@gmail.com

### LIST OF APPENDICES

**A**      Dep. of James A. Ciesniewski

**B**      Asta Funding SEC filing on form 10-K for the period ending Sept. 30, 2014, original page 4 (excerpts)

**C**       Asta Funding SEC filing on form 10-K, Amendment No. 1,  for the period ending Sept. 30, 2016, original page 4 (excerpts)

**D**      Deposition of Lorri Smith (Asta Funding officer)

**E**      Declaration of Daniel A. Edelman (regarding defendants' court filings)

**F**      Deposition of Matthew Blake (owner of Aries)

**G**      Deposition of Parker Moss

**H**      Moss' collection letters to Plaintiffs

**I**      Attorney Network Collection Agreement between Palisades Collection and Aries dated January 15, 2009, amended June 11, 2009.  (PAL000001-15)

**J**      Palisades Defendants Responses to Production of Documents

**K**      Collection Services Agreement between Aries and Moss PC, dated Dec. 10, 2010 (00042-49)

**L**      Purchase and Sale Agreement, PAL000016-88 between Palisades Acquisition XV, LLC (purchaser)  and Great Seneca Financial Corporation, Platinum Financial Services Corporation, Monarch Capital Corporation, Colonial Credit Corporation,  Centurion Capital Corporation, Sage Financial Limited and Hawker Financial Corporation (sellers)

**M**      Records from Maryland Secretary of State

**N**      Data transmission from Aries to Moss PC for Ciesniewski (00033-37).

**O**      Data transmission from Aries to Moss PC for Norman (00038-41)

**P**      Asta Funding "Collections Department" manual

**Q**      Email chain between counsel for Ciesniewski and Moss (00013-17)

**R**      Assignment documents sent by Aries to Moss (00023-24)

**S**      Deposition of Kara A. Graham, attorney at Levy & Associates

**T**      Exhibits produced by Ms. Graham at her deposition

**U**      Satisfaction of judgment filed by Moss

**V**      State court complaint filed against Mr. Ciesniewski by Centurion Capital

**W**     Judgment obtained by Centurion Capital against Mr. Ciesniewski on November 28, 2006.

**X**      Appearance filed by Parker Moss in Centurion Capital v. Ciesniewski on April 14, 2015

**Y**      Motion for Proceedings Supplemental filed by Parker Moss in Centurion Capital v. Ciesniewski on April 14, 2015

**Z**      "Order to Answer Interrogatories, Notice of Hearing and Interrogatories" prepared by Moss for Centurion Capital v. Ciesniewski

**AA**    "Order to Appear in Court to Individual Judgment Defendant" prepared by Moss for Centurion Capital v. Ciesniewski

## CERTIFICATE OF SERVICE

I, Daniel A. Edelman, certify that on August 30, 2019, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system and notification of such filing was sent to all counsel of record.

*/s/Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (IL 0712094)
Cathleen M. Combs (IL 0472840)
**EDELMAN, COMBS, LATTURNER
   & GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:
courtecl@edcombs.com