# **APPENDIX I**

## ATTORNEY NETWORK COLLECTION AGREEMENT


Date: January 16, 2009

This ATTORNEY NETWORK COLLECTION AGREEMENT is between PALISADES COLLECTION, L.L.C., a Delaware limited liability company, with offices at 210 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 ("Palisades") and Aries Capital Partners, Inc. d/b/a Aries Data Collections, 45 Kensico Drive, Mount Kisco, NY, 10549 ("Agency").

**Introduction.** This Agreement is intended to set forth the terms by which Agency will be providing services to Palisades and Palisades Acquisition XVI, LLC (the "Owner" and together with Palisades, collectively, "Palisades Entities") with respect to certain defaulted consumer receivables owned by the Owner and referred to Agency by Palisades ("Receivables").

For good and valuable consideration, the receipt of which is hereby acknowledged, and in exchange for the mutual covenants set forth below, Agency and Palisades agree as follows:

1. **Engagement of Agency.**
   Palisades hereby retains Agency to collect Receivables in accordance with, and subject to the terms of, this Agreement. Agency acknowledges that all Receivables (and the collections thereon) are and will remain the property of Owner and that Palisades is not required to refer any specific number of accounts to Agency even though this Agreement may be in effect.

2. **Services.**
   a) Agency agrees to use its best efforts to collect each Receivable.
   b) Agency will take such action as is reasonably necessary to collect Receivables, employing those methods and services as Agency may reasonably determine to maximize the recovery of Receivables. However, Agency may only take actions that are (i) consistent with Agency's written policies and procedures as delivered to, and approved by, Palisades, (ii) ethical, professional, prudent and generally accepted procedures in the consumer collection industry, (iii) in compliance with all applicable federal, state and local laws, rules and regulations, including without limitation, the Fair Debt Collection Practices Act (collectively, "Requirements of Law") and (iv) approved by Palisades. Agency may only use its own employees to perform the services under this Agreement and may not subcontract or delegate any of those services, except with respect to legal action, judgment enforcement, asset location and skip tracing as specified in this Agreement. No services shall be performed from, through or using a location outside the United States, except as may be expressly authorized in writing by Palisades, in its sole discretion.
   c) If Agency determines that legal action is appropriate with respect to the collection of any Receivable, Agency shall forward any such receivable to an appropriate attorney or law firm in its Legal Network ("Collection Counsel"). Agency will continue its collection efforts during the pendency of legal action with respect to any Receivable. Agency may not authorize Collection Counsel to pursue foreclosure of a debtor's residence without specific written permission of Palisades. If debtor files a substantive answer or counterclaim, Agency will immediately notify Palisades and seek instructions before

instructing Collection Counsel to proceed further with the legal action. Agency will instruct Collection Counsel to seek counsel fees in connection with any litigation to the extent collection of such fees is permissible under applicable law. Counterclaims filed in the ordinary course with a defendant's answer and not asserting a substantive Claim against Palisades shall be defended by Collection Counsel without additional compensation. The defense of substantive claims against Palisades shall be billed by Collection Counsel at a rate of          ) per hour. Palisades reserves the right to either retain said attorney or to retain its own counsel for defense of substantive claims filed against Palisades. Agency and "Collection Counsel" shall work in Palisades' best interest to defend any Order to Show Cause or Motion to open any judgment but reserve the right to not defend such an Order or Motion if they determine that such a course of action is in Palisades' best interests.

d) Agency is authorized to settle or compromise any Receivable balance without Palisades' consent for          or more of the outstanding charged off balance ("Minimum Settlement Percentage"), provided that the parties may agree in writing to a different Minimum Settlement Percentage as to any specified Receivables. Agency is authorized to agree to a deferred payment schedule for such a settlement of up to three (3) months. Agency is not authorized to approve the charging of interest for deferred payments, except with Palisades' prior written consent. Agency will promptly notify Palisades of the terms of any settlement. Agency may not send mass settlement letters without the express written approval of Palisades.

e) Interest on all Receivables forwarded to Collection Counsel will accrue at the legal rate of interest under applicable state law unless there is a duly enforceable contract that sets forth the applicable interest rate. Upon possession of said contract by Agency, interest will accrue at the rate of interest set forth in the agreement or note evidencing the Receivable, including the default interest rate, if applicable; provided however, if any applicable law prohibits such rate, Agency will calculate interest at the highest rate permitted by such applicable law. Palisades reserves the right to instruct Agency not to accrue or collect any, or a certain portion of, the interest on any Receivable

f) Agency will maintain, on its electronic system of record, complete notes and documentation of all payments, credits, and any other collection activities with respect to each Receivable. Agency will also maintain in its care and custody, in trust for the Owner, all agreements and the original document files with respect to each Receivable for which it obtains such documents, except where the original of such documents may be required by Collection Counsel, in which case Agency will maintain a full copy of all such documents, and shall ensure that originals are returned to Palisades upon closing of an account. Agency will follow all reasonable instructions of Palisades with respect to the transmission and delivery of the above described records, data, agreements and files to Palisades upon termination of Agency's services as to any Receivable. Palisades and Owner's Lender will have the right from time to time in their discretion to inspect all files, documents and other records relating to any Receivable and upon request, Agency will deliver to Palisades and Owner's Lender all copies of original document files in Agency's possession.

g) Agency will accurately and timely code all Receivables for status on Agency's system of record, and will timely notify Palisades of the correct status codes upon Palisades' request. The coding will be kept according to generally accepted practices in the

CONFIDENTIAL                                                                                           PAL000002

consumer collection industry in a manner acceptable to Palisades (e.g. bankruptcy, deceased, incarceration, disputes, settlements in full, payment arrangements, judgments, cease communications, attorney involvement, etc.). Agency will name the Owner (or its designee, as may be directed by Palisades) as the owner of such Receivables in Agency's records.

h) Agency will promptly notify Palisades upon receipt of notice of a bankruptcy or insolvency proceeding with respect to any Debtor, including the date filed, the case number, the chapter, the attorney representing the debtor(s) and the district in which the proceeding commenced. Agency will not authorize the filing of a proof of claim in any such bankruptcy or insolvency proceeding without the prior consent of Palisades.

i) Agency will promptly notify Palisades if Debtor is being assisted or represented by a debt counseling service. Agency will in its discretion approve each proposed plan of repayment of Receivables, provided all fees required to be paid to such debt counseling service will be paid solely by Agency and Agency will have no right of reimbursement by Palisades.

j) If, after 180 days of receipt of a Receivable (excludes judgment placements) from Palisades, Agency is unable to collect on such Receivable because no suit has been filed or payment plan agreed to on which the debtor has made payments in accordance with its terms, Agency's services with respect to that Receivable will terminate and Agency will immediately cease work with respect thereto and immediately deliver to Palisades all written information with respect to that Receivable along with a copy of any and all written or electronic communication with the related Debtor. Neither Agency nor its Attorney Network shall have a right of lien on any Receivable or judgment forwarded to them for collection.

k) Agency may pursue collection of all judgments for one (1) year after entry. Thereafter, as to judgments on which no payments or settlement agreements have been made, Agency's services will terminate and Agency and Collection Counsel will immediately cease work with respect thereto and immediately close their file and deliver to Palisades all written information with respect to said Judgment along with a copy of all written or electronic communication with the related Debtor. Neither Agency nor its Collection Counsel Network or any individual attorney shall have a right of lien on any judgment obtained by them or forwarded to them for collection. Agency shall provide monthly reports and any other reasonably requested reports documenting Agency's post-judgment collection efforts on each Judgment Receivable.

3. **Compensation.**

a) Subject to the terms of this Section 3, compensation for the services rendered by Agency hereunder will be at the rates set forth on the fee schedule attached as Appendix A. In no event will Agency be entitled to compensation with respect to accounts recalled under section 2j above or as to judgments as to which Agency's services have been terminated pursuant to Section 2k above.

b) Agency will not be entitled to compensation with respect to any Receivable if (i) payments are received more than ten (10) days after the termination of Agency's services with respect to that Receivable; provided, however, Agency will be entitled to reimbursement of those disbursements incurred by Agency prior to the date of termination and approved by Palisades or (ii) payments are received by Palisades within the ten (10) days from the date Agency began servicing that Receivable, except that with

respect to a Receivable on which a stipulation of settlement or other arrangement of payment has been made, whether by voluntary agreement or by legal execution, fixing specific dates for payment, either in full or in installments, and payments are thereafter received by Palisades on a regular basis in accordance with that arrangement, Agency will be entitled to compensation in accordance with the terms of this Agreement based on the amounts collected. In the event there is a default in payment under that arrangement for a period of sixty (60) days, Agency will not be entitled to further compensation on that Receivable with respect to any payment received by Palisades thereafter. Agency shall not be entitled to any reimbursement for amounts that may be deducted by a prior owner of the Receivables in connection with payments made by the Debtor directly to such prior owner.

c) Agency will be entitled to reimbursement of court costs from monies collected. Court costs are defined as any filing costs authorized by Agency in the pre-litigation and/or post-litigation process. Any disbursements or fees other than court costs shall not be incurred by Agency without prior written consent by Palisades. Agency will provide Palisades with a weekly listing of receipts of court costs. Any court costs, disbursements or fees that have been approved and reimbursed to Agency by Palisades will be deducted from amounts collected by Agency pursuant to Appendix A. Agency shall remit to Palisades all gross collections by Agency, less reimbursable costs and applicable contingency fees. ("net collections"). Such net collections shall be forwarded to Palisades via weekly wire transfer and must be received by Tuesday of the following week. Agency may hold non-guaranteed funds for a period of 7 days. Agency shall be reimbursed court costs out of dollars collected and shall not take a contingency fee on costs recovered. Payments will be applied in this order:

    a. Court Costs
    b. Interest
    c. Principal
    d. Attorney Fees

d) Any negotiable instrument issued by a Debtor in full or partial payment of a Receivable which is returned to Agency unpaid after having been credited as collected will be reversed and charged back to Palisades within sixty (60) days of the date Agency notifies Palisades of that return. Agency will supply documentation of any charge back at the request of Palisades. Agency will not be entitled to payment pursuant to Section 3(a) with respect to any such dishonored payment. On the fifth day of each month, Agency will submit a report to Palisades of all dishonored items during the previous month.

e) Agency hereby waives its right to withhold, or setoff against, any collections for claims that Agency may have against Palisades, provided, however, that Agency retains, and does not waive, its right to be paid the compensation that it has earned for its services relating to a Receivable in accordance with this Agreement.

f) During the period of time accounts are placed with Agency, Agency shall be entitled to a commission as outlined on Appendix A and Section 3 (c) on all payments made on accounts placed with Agency that are paid directly to Client. Client shall notify Agency of all direct payments received weekly.

4. **Insurance; Surety Bond; Trust Fund.**

a) Agency and all Collection Counsel servicing Palisades' accounts shall maintain during the term of this Agreement comprehensive liability, negligence, errors and omissions, employee dishonesty and Fair Debt Collection Practices Act and Fair Credit Reporting Act insurance and insurance otherwise covering claims which may arise out of or in connection with Agency's employees or agents. Agency shall ensure that all Collection Counsel shall maintain professional malpractice insurance coverage. All insurance coverage required pursuant to this section will be maintained with an insurance carrier reasonably satisfactory to Palisades and will be comprehensive and in a form and amount satisfactory to Palisades, provided, however, that such insurance will be for at least $1,000,000 in coverage.

b) Agency and all Collection Counsel servicing Palisades' accounts shall maintain insurance of the types and amounts specified above naming "Palisades Collection, L.L.C., its affiliates and their respective successors and assigns" as additional insured and "Palisades Collection, L.L.C., its affiliates and their respective successors and assigns, as agent", as loss payee as to Receivables subject to this Agreement. At least ten (10) days prior to the expiration of each of its policies for such insurance, Agency will provide to Palisades evidence, reasonably satisfactory to Palisades, that the insurance has been renewed or replaced in accordance with the requirements of this Agreement. Prior to the commencement of any services pursuant to this Agreement, Agency will furnish documentary evidence satisfactory to Palisades that such insurance policies are in full force and effect. Agency agrees to provide to Palisades from time to time, upon request, evidence that such policies continue to be in full force and effect. If any coverage is amended, revoked or otherwise modified, Agency will promptly advise Palisades of the same in writing. Palisades must approve of any such modification in writing prior to the commencement or continuation of the provision of services of Agency pursuant to this Agreement.

c) Palisades will have the right at any time to require Agency to furnish a surety bond to ensure payment to Palisades of amounts collected by Agency with respect to any Receivable.

d) Agency shall establish and maintain a dedicated trust fund in which it shall retain all monies collected for Owner. Such trust fund shall not commingle monies otherwise collected for Palisades. Agency shall send Palisades monthly reconciliations for the dedicated trust fund. At the time it establishes the dedicated trust fund, Agency shall provide to Palisades the relevant information regarding the dedicated trust fund, including the bank name, contact name, bank address, bank phone number, master account number and account name.

5. **Audits.**

Agency will maintain all necessary records for Receivables and will cooperate with Palisades and Owner (and the Owner's primary lenders or the agent of such lenders, referred to as "Owner's Lender") in connection with any review of Receivables, revenue paid or received and all other pertinent information relating to Receivables. Palisades (and Owner's Lender) will also be entitled to make periodic audits of the records of Agency with respect to all Receivables, including an audit of the dedicated trust fund, and Agency agrees to cooperate fully by providing full and immediate access to its premises to Palisades (and Owner's Lender) representatives or agents during regular business hours and by making all files and

-5-

records relating to Receivables available to permit the audits to be completed promptly and efficiently.

6. **Representations and Warranties of Agency.**

   Agency represents and warrants to Palisades as follows:

   a) Agency is experienced and currently engaged in the consumer collection industry and has obtained all material licenses, permits and registrations necessary for the conduct of the servicing of receivables. Agency further agrees to submit to Palisades proof of such licenses, permits, and registrations (i) on or before the commencement of this Agreement, and (ii) at such other times as Palisades may require.
   b) Agency will conduct its business and all services performed under this Agreement in compliance with all Requirements of Law.
   c) This Agreement constitutes the legal, valid and binding obligation of Agency, enforceable against Agency in accordance with its terms.

7. **Representations and Warranties of Palisades.**

   a) Palisades represents and warrants to Agency that with respect to each Receivable assigned to Agency, Palisades will furnish copies of pertinent records showing the total amounts of the unpaid balance with respect to each account to the extent that such records, if any, are in Palisades' possession. Palisades makes no representation or warranty as to any minimum number, dollar amount or proportion of accounts receivable which will be referred to Agency or the collectability of same.
   b) This Agreement constitutes the legal, valid and binding obligation of Palisades, enforceable against Palisades in accordance with its terms.

8. **Payments, Agency Reports; Live File Review.**

   a) Agency will deposit into the dedicated trust fund as directed by Owner's Lender by wire transfer all collections received by Agency on all Receivables in any calendar week on or before every Tuesday of the next calendar week and will simultaneously send an electronic transmission report documenting such collections in a format acceptable to Palisades. Agency shall not, without the prior written consent of Owner's Lender, take direction from any Palisades Entity with respect to such dedicated trust fund.
   b) Agency will furnish to Palisades, by the last Wednesday of each calendar month by electronic transmission a report of the status of each Receivable, a monthly collections report, and, if requested by Palisades, a Master File. "Master File" means a summary of account level data of Receivables in digital field format on CD-ROM, containing such data and fields as Agency may have on its system of record. If requested by Owner's Lender, Agency will provide copies of each of the items in this paragraph to Owner's Lender, provided that the Owner's Lender has indicated in its request that Palisades has failed to provide such items as required in its agreements with the Owner's Lender.
   c) All reports will be in form and substance satisfactory to Palisades.
   d) Agency shall make available on secure website information with respect to the Receivables containing such data and fields, and in a format, acceptable to Palisades, and shall provide Palisades with secure, remote access to such website.

CONFIDENTIAL                                                                                                              PAL000006

9. **Changes of Status.**
Agency will promptly notify Palisades of, and correct its records to reflect, any information Agency receives relating to inaccurate Receivables data including, without limitation, addresses and phone numbers promptly after the making of the determination that its information is incorrect and verifying the corrected information.

10. **Agency Inquiries.**
Upon Agency receiving any information concerning a Debtor's employment status, Agency will record in its records and, if requested by Palisades, advise Palisades, as to the status.

11. **Indemnification by Agency.**
Agency agrees to indemnify, defend and hold each of Palisades, each other Palisades Entity, and their respective officers, directors, managers, attorneys, partners, employees and assignees (Palisades, each other Palisades Entity and each of the foregoing referred to as a "Palisades Indemnified Person") harmless from and against any and all liability, losses, damages, costs, penalties and expenses (including without limitation, reasonable attorneys' fees) (collectively "Losses") arising out of or relating to (i) any and all claims or complaints of any person or entity with respect to any of the methods, actions, procedures, devices or communications employed or made by Agency, its representatives or agents (including, without limitation, their respective employees) relating to collecting any of Receivables, (ii) any failure to comply with any applicable Requirements of Law by Agency, its representatives or agents, (including, without limitation, their respective employees), (iii) negligent or willful misconduct of Agency, its representatives or agents in connection with the collection of Receivables, (iv) Agency's failure to comply with any of the terms and conditions of this Agreement. Neither party shall be liable to the other for incidental, special or consequential damages. Palisades and Agency will each promptly provide the other with written notice of any claim, suit or action that may give rise to a right of indemnification for a Palisades Indemnified Person. The failure of Palisades to give prompt notice will not relieve Agency of its obligations to indemnify hereunder except to the extent Agency is materially prejudiced by such failure. If any such claim, suit or action of any kind is commenced against a Palisades Indemnified Person, Agency will, if requested by a Palisades Indemnified Person, assume at Agency's expense the defense (with counsel reasonably acceptable to a Palisades Indemnified Person) of such claim, suit or action and Agency will be liable for the costs and expenses thereof, including, without limitation, attorney's fees and disbursements. Each Palisades Indemnified Person, in its sole discretion and at its own cost, may retain its own counsel and defend such claim, suit or action. Agency will cooperate fully with each Palisades Indemnified Person and its counsel in any claim, suit or action.

12. **Indemnification by Client.**
Palisades agrees to indemnify, defend and hold Agency, each other Agency Entity, and their respective officers, directors, managers, attorneys, partners, employees and assignees (Agency, each other Agency Entity and each of the foregoing referred to as an "Agency Indemnified Person") harmless from and against any and all liability, losses, damages, costs, penalties and expenses (including without limitation, reasonable attorneys' fees) (collectively "Losses") arising out of or relating to (i) any and all claims or complaints of any person or entity with respect to any of the methods, actions, procedures, devices or communications

-7-

employed or made by Palisades, its representatives or agents (including, without limitation, their respective employees) relating to collecting any of Receivables, (ii) any failure to comply with any applicable Requirements of Law by Palisades, its representatives or agents, (including, without limitation, their respective employees), (iii) negligent or willful misconduct of Palisades, its representatives or agents in connection with the collection of Receivables, (iv) Palisades' failure to comply with any of the terms and conditions of this Agreement. Palisades and Agency will each promptly provide the other with written notice of any claim, suit or action that may give rise to a right of indemnification for an Agency Indemnified Person. The failure of Agency to give prompt notice will not relieve Palisades of its obligations to indemnify hereunder except to the extent Palisades is materially prejudiced by such failure. If any such claim, suit or action of any kind is commenced against an Agency Indemnified Person, Palisades will, if requested by an Agency Indemnified Person, assume at Agency's expense the defense (with counsel reasonably acceptable to an Agency Indemnified Person) of such claim, suit or action and Palisades will be liable for the costs and expenses thereof, including, without limitation, attorney's fees and disbursements. Each Agency Indemnified Person, in its sole discretion, may retain its own counsel and defend such claim, suit or action. Should Agency Indemnified Person seek its own counsel and defend such claim, Palisades shall not incur any costs for said defense. Palisades will cooperate fully with each Agency Indemnified Person and its counsel in any claim, suit or action.

13. **Term and Termination**.

   a) This Agreement will be deemed entered into as of the date first written above, and unless terminated as set forth herein, will continue until terminated by mutual written agreement of termination executed and delivered by Agency and Palisades. This Agreement, and the services with respect to any Receivables (the "Released Receivables"), may be terminated for any reason by Palisades upon at least one (1) days prior written notice and by Agency upon at least thirty (30) days prior written notice ("Termination"). Upon Termination, Agency and any attorneys to whom it has referred any Receivables, will discontinue any further servicing of the Released Receivables immediately upon receipt of such notice and immediately return to Palisades the materials and collections, and perform its other duties with respect to termination as outlined herein. Neither Agency nor any attorneys to whom it has referred any Receivable shall have a lien on any Receivable returned to Palisades.
   b) Agency will immediately cease its services with respect to any Released Receivable upon the effective date of the Termination, and thereafter will refer all Debtor inquiries and forward correspondence with respect to such Released Receivables account to Palisades or Palisades' designee. Within five (5) business days of the effective date of the Termination, or cessation of any services with respect to a Released Receivable, Agency will (i) return to Palisades all written information with respect to such Released Receivable (including, without limitation, documents furnished by and documents pertaining to any suit, action or proceeding), (ii) provide a report identifying the payments, if any, received with respect to such Released Receivable and the status of any suit, action or proceeding with respect to such Released Receivable and (iii) transmit to Palisades or its designee all data relating to such Released Receivables in a format reasonably acceptable to Palisades.

CONFIDENTIAL
PAL000008

c) Notwithstanding any termination of this Agreement, (i) each party will remain liable to the other in respect of any breach of this Agreement occurring prior to the date of Termination, (ii) each party will remain liable to the other in respect of the obligations contained in sections 3, 5, 11, 12, 13, 14, 16 and 18 of this Agreement (all of which will survive Termination) and (iii) Agency agrees to cooperate with Palisades with respect to any Receivables serviced by Agency prior to the date of Termination. All amounts held by Agency at the date of Termination of this Agreement or received by Agency after the date of such Termination, with respect to any Released Receivable, will be immediately remitted to Palisades (notwithstanding any provision for payment of collections on a different date). Until delivery of such amounts to Palisades, the remittance thereof, such amounts will be held by Agency in trust for the benefit of the Owner.

d) Notwithstanding anything contained in this Agreement to the contrary, if Palisades is terminated as "Servicer" under the applicable lending documents, the Owner's Lenders, without the consent of the parties hereto, may (i) upon notice to Agency, assume the rights of Palisades and the Owner hereunder and/or assign the rights of Palisades, the Owner and the Owner's Lenders hereunder to any Person or (ii) upon 30 days notice to Agency, terminate this Agreement. Agency agrees to provide, upon the request of Owner's Lenders, information with respect to the Receivables reasonably requested by such Owner's Lenders. Each of Palisades and Agency acknowledges and agrees that the Owner's Lenders are third party beneficiaries under this Agreement and shall have the full power to enforce their rights and benefits hereunder and that copies of this Agreement may be provided to the Owner's Lenders and their assigns on a confidential basis.

14. **Recall.**
Palisades reserves the right to recall any Receivable at any time. Neither Agency nor any attorney that it has referred a Receivable to has a right of lien on any Receivable recalled by Palisades. In the event of closure or recall, Agency if necessary, shall recall the account from its Network attorney, and turn over to Palisades immediately all data and materials relating to the recalled account in its possession.

15. **Notices.** Any notice, request, consent or other communication to any party hereto must be in writing and will be deemed effective upon delivery when (i) delivered in person, or (ii) sent by facsimile, if promptly confirmed in writing, or (iii) when sent by certified mail, returned receipt requested, with postage prepaid, or (iv) posted with a recognized national overnight carrier, addressed as follows:

If to a Palisades Entity:

Palisades Collection, L.L.C.
210 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Fax #: (201) 569-4595
Attention: Gary Stern, Manager

If to Agency:

Aries Data Collections
P.O. Box 742
Katonah, NY 10536
Fax #: (914) 666-2841
Attention: Matthew J. Blake

CONFIDENTIAL                                                                                           PAL000009

Either party may at any time change the address or facsimile number to which notices or other communications are to be sent by a notice to the other party given in accordance with this Section 15.

16. **Confidentiality.**

All information directly or indirectly relating to Accounts placed with Agency by Palisades or to the existence and terms of the relationship between Agency and Palisades shall be considered to be both confidential and proprietary to Palisades. Agency covenants and agrees that it shall retain such information in confidence and not disclose or use such information other than in accordance with this Agreement, such as in bidding on or servicing accounts for an originator of receivables serviced by Agency hereunder. The covenants and agreements contained in this paragraph shall survive the termination of this Agreement. Similarly, the terms and conditions of this Agreement and Agency's methods of operation shall be considered and maintained by Palisades as confidential. Agency shall not use the name of any Palisades Entity in connection with its services under this Agreement, except to refer to the appropriate Palisades entity as the purchaser of the Receivable in Agency's collection letter. Agency will cause its employees, owners, directors, officers, managers, agents, representatives, successors and assigns to comply with this section of this Agreement. Palisades and Agency acknowledge that Agency's breach of this Section 16 will result in actual and substantial damages to Palisades, the amount of which will be difficult to ascertain with precision. Therefore, if Agency breaches this Section 16, Agency will pay Palisades as liquidated damages (a) $100.00 per Receivable with respect to each Receivable Agency may purchase or service in violation of this Section 16 and (b) $100,000.00 for each disclosure made in violation of this Section 16, together with the fees and expenses (including without limitation attorneys fees) that Palisades may incur in recovering damages and in preventing Agency's further breach of this Section 16. Notwithstanding the above, Agency may disclose any of the foregoing to the extent required by law or regulation, but only after prior written notice to Palisades.

17. **Waiver.**

No failure or delay on the part of Agency or Palisades to exercise any of their respective rights, powers or privileges under this Agreement will operate as a waiver thereof, nor will any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power or privilege by Agency or Palisades under the terms of this Agreement, nor will any such waiver operate or be construed as a future waiver of such right, power or privilege under this Agreement.

18. **Governing Law**

This Agreement will be construed and interpreted in accordance with the laws of the State of New Jersey. The parties hereto agree to submit to the exclusive jurisdiction of the state and federal courts located in New Jersey. The parties agree that injunctive relief may be necessary to prevent irreparable harm or to preserve the status quo. Each of the parties waives their rights to trial by jury, if any, in any and all actions proceedings of any kind, nature, or description whatsoever, in any court whether arising out of, under or by reason of this Agreement. This waiver also applies to proceedings resulting from a party's act or failure to act under this Agreement and to proceedings brought to determine the interpretation or ability of any part of

CONFIDENTIAL                                              PAL000010

this Agreement. This clause will survive the termination of this Agreement whether for cause or without cause..

19. **Entire Agreement.**
This Agreement constitutes the entire agreement between the parties with respect to Receivables to be forwarded for legal action through Agency's Collection Counsel Network and may be amended, changed or modified only by the written consent of the parties hereto and Owner's Lenders. This Agreement supersedes all prior written or oral agreements with respect to Receivables to be forwarded for legal action through Agency's Collection Counsel Network between any Palisades Entity and Agency as to the servicing of any such Receivables, and governs the servicing of any such Receivables referred to Agency by any Palisades Entity prior to the effective date of this Agreement.

20. **Successors and Assigns.**
This Agreement shall inure to the benefit of and be binding upon Palisades and Agency and their respective successors and assigns. Neither this Agreement, nor any rights hereunder, may be assigned or pledged, in whole or in part, by Agency without the prior written consent of Palisades. Any such action in violation of this Agreement shall be void. This Agreement may be assigned at any time by Palisades to Owner's Lender or any designee thereof, by writing between Palisades and such assignee.

21. **Severability.**
If any provision of this Agreement or any party hereof is held invalid, illegal, void or unenforceable by reason of any rule of law, administrative or judicial provision or public policy, such provision will be ineffective only to the extent invalid, illegal, void or unenforceable, and the remainder of such provision and all other provisions of this Agreement will nevertheless remain in full force and effect.

22. **Independent Contractor.**
Nothing contained in this Agreement will be deemed to constitute Palisades and Agency as partners, joint ventures, principal and Agency, or employer and employees. Agency is solely responsible for maintaining its own business insurance and worker's compensation policy and paying all its applicable taxes, assessments, fees, costs and expenses. Nothing in this Agreement will constitute or authorize Agency to bind Palisades to any obligations, or to assume or create any responsibility for or on behalf of Palisades to any third-party. Any monetary arrangements made by Agency with outside collectors or attorneys will be Agency's sole responsibility and will in no way constitute or imply any additional obligation on the part of Palisades, whose obligation is limited to payment to Agency of compensation earned in accordance with this agreement. In the event any account is referred by Agency to an attorney or outside collector, the conditions of this agreement will be made part of Agency's arrangement with such attorney or outside collector. This provision is not intended to limit any restriction in this Agreement or Agency's right to use third parties or others to collect any Receivables.

23. **Facsimile and Counterparts.** This Agreement may be executed and delivered by facsimile and/or in two or more counterparts, each of which will be deemed an original and all of

CONFIDENTIAL                                                                                           PAL000011

IN WITNESS WHEREOF, the parties have executed this Collection Management Agreement as of the date first above written.

PALISADES COLLECTION, L.L.C.

By: _____
Name: ~~Gary Stern~~ Cameron Williams
Title: ~~Manager~~

ARIES CAPITAL PARTNERS, INC.

By: _____
Name: Matthew J. Blake
Title: Vice President

-13-

## Appendix A

### FEE SCHEDULE

Dated: _January 15, 2009_

Contingency fee to be paid inclusive to Agency and Network:

___%. In accordance with Section 3(c) of this Agreement, Agency shall not be entitled to a contingency fee on court costs recovered.

CONFIDENTIAL

PAL000013

## AMENDMENT TO ATTORNEY NETWORK COLLECTION AGREEMENT

Date: June 11, 2009

This AMENDMENT TO ATTORNEY NETWORK COLLECTION AGREEMENT (the "Amendment") is made between Palisades Collection, L.L.C. ("Palisades") and Aries Capital Partners, Inc. dba Aries Data Collections ("Agency").

WHEREAS, Palisades and Agency entered into an Attorney Network Collection Agreement dated January 15, 2009 pursuant to which Agency provides services to Palisades and Palisades Acquisition XVI, LLC (the "Owner") with respect to certain defaulted consumer receivables owned by the Owner and referred to Agency by Palisades (the "Agreement");

WHEREAS, Palisades and Agency now desire to amend the Agreement to change Agency's fee with respect to certain closed judgment accounts referred to Agency for collection and to provide for the reimbursement to Agency of certain costs;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1. Capitalized terms used in this Amendment and not otherwise defined herein shall have the same meaning set forth in the Agreement.

2. Appendix A is amended to read as follows:

### "FEE SCHEDULE

Contingency fee to be paid inclusive to Agency and Network:

For collection on judgments filed in New York:

For collection on judgments filed in states other than New York:       plus the assigned law firm's commission, not to exceed a total of

In accordance with Section 3(c) of this Agreement, Agency shall not be entitled to a contingency fee on court costs recovered."

3. A new sentence is added after the third sentence of Section 3(c) to read as follows: "Notwithstanding the foregoing sentence, Agency shall be reimbursed upon request for certain of its out-of-pocket costs for third-party asset searches in connection with judgments filed in states other than New York on which Agency collects any amounts owing. These reimbursable costs are: employment locate fee (between $10.00 and $75.00); bank locate fee (between $20.00 and $65.00)".

4. Except as specifically modified by this Amendment, the terms of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Amendment to Attorney Network Collection Agreement as of the date first above written.

PALISADES COLLECTION, L.L.C.

By: _____
Name: C.E. Williams
Title: Authorized Synatory

ARIES CAPITAL PARTNERS, INC. dba ARIES DATA COLLECTIONS

By: _____
Name: Mathew Blake
Title: VP

2